[Cite as *Caparella-Kraemer & Assoc., L.L.C. v. Grayson*, 2020-Ohio-3498.]

- 

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| CAPARELLA-KRAEMER & ASSOC., | : | |
| Appellee, | : | CASE NO. CA2019-11-184 |
| | : | O P I N I O N |
| - vs - | | 6/29/2020 |
| | : | |
| CHRISTOPHER GRAYSON, | : | |
| Appellant. | : | |


CIVIL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CVI1800603

Christopher Grayson, 8133 Candlelight Terrace, West Chester, Ohio 45069, pro se


**RINGLAND, J.**

{¶ 1}  Christopher Grayson appeals from the decision of the Butler County Area III Court, which granted a judgment for attorney fees in favor of Caparella-Kraemer & Associates, LLC ("the firm").  For the reasons described below, this court reverses the trial court's decision and vacates the judgment.

{¶ 2}  In June 2018, the firm filed a small claims complaint for breach of contract against Grayson.  The complaint alleged that Grayson had entered into a contract for the provision of legal services with the firm and had failed to pay for approximately 20 hours of legal services.  The firm alleged that Grayson owed $2,169.21, which included $492.30 in

accrued interest.

{¶ 3}   The firm attached copies of the firm's fee agreement, which was signed by Grayson and attorney Bradley Kraemer.  The firm attached copies of the complete record of billings sent to Grayson for the two-year period, between 2015 and 2017, in which the firm, and specifically, Kraemer, represented Grayson in a divorce.

{¶ 4}   Grayson answered and counterclaimed.  In his answer, Grayson alleged that he disputed certain of the firm's billings.  He claimed to have paid the firm $15,523.44 but only agreed to pay billings totaling $14,647.35.  Therefore, Grayson asked for $876.09 in his counterclaim.   Grayson attached e-mail correspondences in which he had communicated to the firm his various concerns with the firm's billings.   Among other complaints, Grayson argued that he was overbilled for attendance at court conferences, for reviewing certain records, and for filing an unsuccessful motion.   Kraemer replied to Grayson's concerns, writing that the billings were legitimate and reflected time spent on Grayson's case.

{¶ 5}   At a bench trial before a magistrate, the firm called Kraemer as its first witness. Kraemer testified that he had been practicing law since 1998, that he had been practicing domestic relations law for 15 years, and that he represented Grayson in Grayson's divorce. Kraemer identified the two-page, hourly fee agreement entered into between the firm and Grayson.  It provided that Grayson agreed to pay $250 per hour for attorney services and $80 per hour for legal assistant (paralegal) services.  The agreement further provided for minimum charges for certain occurrences during the course of the representation, including a minimum of one hour of attorney time for preparing any court document over three pages, or for any court appearance, including scheduling conferences, pretrial conferences, or motion hearings.

{¶ 6}   Kraemer testified that his firm billed for travel to and from court hearings and

that this was the customary practice of attorneys in the area. Kraemer further testified that court hearings do not always start on time, and his firm would bill for the time he spent waiting for hearings to begin. In general, Kraemer testified he would bill for any time spent working on a case.

{¶ 7} Next, the firm called Stephanie Southard, its office manager. Southard managed the firm's billing. Every two weeks attorneys and staff would provide her their time sheets, and she would then produce client bills. Southard identified a three-page document as Grayson's final bill from the firm. The document listed various legal services, the time spent on each service, and the billing amount on each service. The document further reflected an unpaid balance totaling $2,209.21.[1] Southard confirmed that she prepared this document and that the balance remained unpaid. The firm then rested its case.

{¶ 8} During his case-in-chief, Grayson called another attorney at the firm – Stefanie Brunemann – to testify. Brunemann agreed that she had represented Grayson at two hearings because Kraemer had a conflict.[2] On cross-examination by the firm, Brunemann testified that she also billed for travel to and from the courthouse, and any other time associated with attending a hearing, including time spent in the hallway talking to a client, talking to opposing counsel, or "basically any time I spent on that case until I can start on that next case."

{¶ 9} Grayson testified on his own behalf. As to the fee agreement, Grayson claimed that the firm had never provided him with a copy. Grayson agreed that he signed the second page of the fee agreement but because the first page did not have his signature

---

1. Additional interest and the filing fee for the complaint were added to the amount stated in the complaint.

2. Grayson's apparent purpose in eliciting Brunemann's testimony was to point out that he had only agreed to be represented by Kraemer in the divorce and had never met Brunemann before the initial hearing. However, no provision of the fee agreement provided for exclusive representation by Kraemer.

it could have been "swapped." Grayson then testified concerning each specific objection he had to the firm's billing.

{¶ 10} Grayson explained that he objected to various billings over one hour of attorney time for court appearances where the actual conference was 10 minutes or less. Grayson argued that no preparation was required for these hearings. Grayson also argued that the fee agreement did not specifically state that the firm would bill him for attorney travel time to court conferences, adding that "getting paid $250 an hour to drive your Escalade is not reasonable."

{¶ 11} Grayson disputed attorney and paralegal charges for review of responses to a subpoena. Grayson claimed that it would not have reasonably taken the amount of time indicated to review the documents returned because they were for wrong bank account, which would have been readily apparent. Grayson also disputed a billing for attorney review of other bank records because he allegedly told Kraemer to not review those documents and send them to him to review instead.

{¶ 12} Finally, Grayson testified that he disputed a billing where Kraemer's paralegal listened to the recording of a court hearing for the purpose of finding a statement made during the hearing. Grayson stated if he had known it would cost him two and half hours of paralegal time, he would have listened to the hearing himself.

{¶ 13} The magistrate issued a written decision. Initially, the magistrate rejected Grayson's suggestion that the firm "swapped" the first page of the fee agreement, noting that there was no evidence to support such an assertion. The court noted that it was perhaps not coincidental that Grayson made this claim because most of his complaints concerning overbilling related to the firm's charges for attendance at court hearings, and the first page of the agreement contained the minimum one-hour billing provision.

{¶ 14} With regard to billing for court appearances, the magistrate noted that, in

addition to the fee agreement's minimum-billing provision, Kraemer and Brunemann had both testified that they billed for travel time to and from hearings and that this time would include the time waiting for the hearing to start.

{¶ 15} As to the claim of overbilling to review the wrong bank records, the court found that Grayson submitted no evidence to show what documents should have been requested and why the documents that were sent were wrong. The magistrate noted that Grayson could have questioned Kraemer concerning this issue but failed to do so.

{¶ 16} With regard to billing for review of documents that Grayson stated he wanted to review himself (therefore saving himself attorney fees) the court found that while having Grayson review the documents was proper and should be encouraged, there was nothing wrong with Kraemer reviewing the documents and that he had a professional obligation to do so.

{¶ 17} Ultimately, the court granted judgment in favor of the firm for the full amount set forth in the final unpaid invoice and denied Grayson's counterclaim. In so finding, the magistrate wrote, "[t]he burden was on [Grayson] to prove by a preponderance of the evidence that these charges were improper, and the court cannot find that he has met that burden."

{¶ 18} Grayson objected to the magistrate's decision. Among other objections, Grayson argued the that the magistrate had misapplied the burden of proof, effectively requiring him to disprove the firm's claim.[3] The court overruled Grayson's objections and adopted the magistrate's decision. The court specifically found that the magistrate did not shift the burden of proof.

---

3. Grayson argued that the magistrate applied the incorrect "standard of review," however, it is clear that his argument concerned an improper shifting of the burden of proof.

{¶ 19} Grayson appeals, raising three assignments of error. The firm did not file a brief and otherwise took no action to defend its judgment on appeal.

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE TRIAL COURT ERRED IN AWARDING FEES IN A COLLECTION ACTION WITHOUT EVIDENCE IN THE RECORD SHOWING THE HOURS BILLED TO BE REASONABLE AND NECESSARY.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED IN AWARDING FEES IN A COLLECTION ACTION WITHOUT EVIDENCE IN THE RECORD SHOWING THE HOURLY RATES TO BE REASONABLE.[4]

{¶ 24} In his first two assignments of error, Grayson contends the court erred in granting judgment to the firm because the firm presented no expert testimony as to the reasonableness of the attorney fees charged or the hourly rates charged. Grayson argues that expert testimony was necessary because he objected to the firm's billings.

{¶ 25} With respect to the provision of legal services, the terms of an attorney's compensation are typically established by contract prior to employment and formation of the fiduciary relationship between attorney and client. *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App. 3d 313, 323 (10th Dist.1995), citing *Jacobs v. Holston*, 70 Ohio App.2d 55, 59 (6th Dist.1980); *accord Hawkins v. Miller*, 11th Dist. Lake No. 2011-L-036, 2011-Ohio-6005, ¶ 18.

{¶ 26} An attorney has a professional duty not to charge a "clearly excessive fee." Prof.Cond.R. 1.5(a). Accordingly, "[w]here, prior to employment, the attorney and client have reached an agreement as to the hourly rate to be charged and the amount of the

---

4. We will address Grayson's first two assignments of error collectively.

retaining fee, but the agreement fails to provide for the number of hours to be expended by the attorney, in an action for attorney fees the burden of proving that the time was fairly and properly used and the burden of showing the reasonableness of work hours devoted to the case rest on the attorney. * * * Furthermore, a trial court must base its determination of reasonable attorney fees upon [the] actual value of the necessary services performed, and there must be some evidence which supports the court's determination." *Climaco* at 323, citing *Jacobs*.

{¶ 27} The factors to be considered by the court in determining whether a fee is reasonable are

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent.

Prof.Cond.R. 1.5(a); *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, Slip Opinion No. 2020-Ohio-1056, ¶ 12.

{¶ 28} "Generally, merely submitting an attorney's itemized bill is insufficient to

establish the reasonableness of the amount of work billed." *Bolek v. Miller-McNeal*, 8th Dist. Cuyahoga No. 103320, 2016-Ohio-1383, ¶ 12, citing *United Assn. of Journeyman & Apprentices of the Plumbing & Pipe Fitting Industry v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. Hardin No. 6-12-06, 2013-Ohio-144, ¶ 25; *Whitaker v. Kear*, 123 Ohio App.3d 413, 424 (4th Dist.1997); *Climaco* at 324. Frequently, expert testimony is introduced establishing that the hours charged were reasonable. *Id.*, citing *Hawkins*, 2011-Ohio-6005 at ¶ 28; *Whitaker* at 424-425. Sometimes, a party may offer testimony from other individuals to corroborate the attorney's self-serving testimony that the fee request is reasonable. *Id.* at ¶ 13, citing *Koblentz & Koblentz v. Summers*, 8th Dist. Cuyahoga No. 94806, 2011-Ohio-1064, ¶ 14; *Schottenstein Zox & Dunn Co., L.P.A. v. Reineke*, 9th Dist. Medina No. 10CA0138-M, 2011-Ohio-6201, ¶ 26-28.

{¶ 29} The evidence presented in this case as to the reasonableness of attorney fees charged was minimal and would have been even less so had Grayson not elicited testimony from Brunemann during his case in chief. Kraemer and Brunemann both testified that they billed for travel time to and from court and for time waiting for hearings to begin and that this billing practice was customary. In addition, Kraemer testified that he had been an attorney for over 20 years and had been practicing domestic relations law for 15 years.

{¶ 30} There was no evidence presented by the firm as to the reasonableness of the other charges to which Grayson objected. The firm did not question Kraemer as to his specific work on the case, whether it was reasonable and necessary, and whether the billings accurately reflected his work. There was also no evidence presented as to the reasonableness of the hourly rates charged by the firm. And the firm did not seek to independently prove the reasonableness of the attorney or paralegal time spent on the case, or hourly rates charged, through the use of some other evidence, e.g., through an expert witness or otherwise.

{¶ 31} Even if there was some minimal evidence presented that a portion of the firm's fees were reasonable, the decision herein must still be reversed because the magistrate expressly found that it was Grayson's burden to demonstrate the impropriety of the firm's billings. In essence, the firm and court behaved as if the firm demonstrated its entitlement to fees simply by authenticating and submitting into evidence its final unpaid invoice. However, given Grayson's claim that he was overbilled, the burden of proof remained on the firm to prove the reasonableness of fees invoiced.

{¶ 32} Beyond improperly shifting the burden of proof to Grayson, there is also no indication in the magistrate's decision that the court considered the factors relevant to determining a reasonable attorney fee, whether the time expended on the objected items was necessary and reasonable, and whether the hourly rates charged were reasonable. Instead, the focus of the magistrate's decision was on rejecting Grayson's arguments.

{¶ 33} On this record, the firm failed to present evidence of the reasonableness of its time spent and hourly rates charged on Grayson's case and the court erred by improperly shifting the burden of proof to Grayson and not considering whether the firm had demonstrated the reasonableness of its fees. Accordingly, this court sustains Grayson's first and second assignments of error and reverses the decision of the area court as to its judgment in the firm's favor.[5]

{¶ 34} Assignment of Error No. 3

{¶ 35} THE TRIAL COURT ERRED IN AWARDING FEES IN A COLLECTION ACTION FOR TRAVEL AND TIME SPENT WAITING FOR HEARINGS TO START WHEN SUCH ACTIVITIES ARE NOT SPECIFIED AS BILLABLE SERVICES IN THE FEE AGREEMENT.

---

5. Grayson did not separately appeal the court's judgment dismissing his counterclaim, and therefore, that aspect of the decision is affirmed.

{¶ 36} In his third assignment of error, Grayson argues that the court erred in awarding the firm's attorney fees because "travel" was not explicitly listed as a billable service in the fee agreement. This issue is moot given the court's resolution of Grayson's first and second assignments of error and therefore need not be decided. App.R. 12(A)(1)(c).

{¶ 37} Judgment reversed and vacated.

S. POWELL, P.J., and PIPER, J., concur.