[Cite as *Lykins v. Lykins*, 2021-Ohio-274.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


SUSANA E. LYKINS,                        :

    Appellee,                          :           CASE NO. CA2020-03-009

                                       :           O P I N I O N
- vs -                                             2/1/2021

                                       :

DONALD H. LYKINS,                        :

    Appellant.                         :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2015DRA00621


Heyman Law, LLC, D. Andrew Heyman, 1212 Sycamore Street, Suite 32, Cincinnati, Ohio 45202, for appellee

Donald H. Lykins, 8415 Reading Road, Reading, Ohio 45215, pro se


**HENDRICKSON, P.J.**

{¶1}   Donald Lykins ("Donald") appeals from the decision of the Clermont County Common Pleas Court, Domestic Relations Division, which modified his child support order and awarded attorney fees to his ex-wife, Susana Lykins ("Susana").  For the reasons that follow, this court affirms the domestic relations court's decision.

{¶2}   The parties wed in 1996 and divorced in 2017.  Two children were born of the

marriage, and both are still minors. On a prior appeal to this court from the divorce, amongst various other arguments presented, Donald assigned error to the decree's child support order.[1] Relevant to the current appeal, Donald challenged the court's decision to impute him with approximately $31,000 in self-employment income resulting from his ownership of multiple residential rental properties. This court affirmed the domestic relations court's decision with respect to child support, with the exception of one correction to the child support worksheet to account for spousal support payments.

{¶3} Pursuant to this court's remand instructions, the domestic relations court amended the child support order in an entry filed in July 2018. A few months later, Donald requested that the Clermont County Child Support Enforcement Agency (CSEA) perform an administrative review of the child support order. The CSEA conducted that review and later issued an administrative recommendation lowering Donald's child support order.[2] The apparent reason for the recommendation to lower Donald's child support order was that the child support worksheet completed by the CSEA imputed *no income* to Donald with regard to his rental property business.

{¶4} Susana objected to the administrative recommendation and the matter was transferred to the domestic relations court for review. Susana filed a memorandum in support of her objections, in which she asked for a sanction of attorney fees under R.C. 2323.51, alleging that Donald had engaged in frivolous conduct by requesting the administrative review. In turn, Donald moved the court to adopt the CSEA recommendation and modify child support. Additionally, he asked the court to modify or eliminate spousal

1. *Lykins v. Lykins*, 12th Dist. Clermont Nos. CA2017-06-028 and CA2017-06-032, 2018-Ohio-2144.

2. As noted by the domestic relations court, it is uncertain under what statutory or regulatory authority the CSEA acted to review the child support order as the regulations only permit review every 36 months after a child support order has issued. Based upon testimony later adduced at the hearing, the court found that no regulatory exception to allow an early administrative review applied.

support.

{¶5}    The court held an evidentiary hearing over two days, at which Donald and Susana testified.  The focus of the hearing was the finances of Donald's rental property business and his claim – despite having almost no debt tied to any of the rental properties – that he operated the business at a considerable loss.[3]  The evidence presented was voluminous and convoluted.  Donald testified that the business was operated mostly in cash and that most tenants paid their rent in cash.  Despite owning multiple rental properties, Donald claimed he kept no records documenting when a tenant would pay him cash.  Instead, he memorized all that information and would provide cash-paying tenants with a receipt (he did not keep a copy).  He did not maintain a separate business bank account and would sometimes deposit cash from rents into his personal checking account.  Often, he would never deposit the cash, and it would instead be paid directly to the various people he employed to maintain the properties.  He did not issue form 1099s to any of the people he paid to work on or maintain the properties.

{¶6}    Donald kept a handwritten "ledger" of payments to workers or contractors, which was introduced into evidence.  The ledger was essentially a clipboard with blank paper and Donald would have contractors or workers sign it when he gave them cash payment for their work.  The information contained on the ledger was minimal, and often only included the date, the amount Donald allegedly paid in cash, the printed and signed name of the worker or contractor, and sometimes the address number of the property where work would be or had been performed.  Donald did submit receipts from stores where he purchased supplies for the rental properties.  Finally, Donald submitted into evidence a

---

3.  In explaining why he would continue to operate a rental property business at a loss, Donald likened the business to raising livestock, i.e., that you must feed and care for livestock while you possess them but you may later sell them for a profit.  Donald claimed he owned the rental properties as "equity," with the end goal of selling them at some later date for a profit.  The court rejected this argument, noting that Donald had argued in the earlier divorce proceedings that the value of the rental properties had decreased over time.

spreadsheet, which he had created, which purported to show his income and expenses from operating the rental property business.

{¶7}    In its decision, the court sustained Susana's objections to the CSEA administrative recommendation, finding that the CSEA lacked the legal authority to consider Donald's request for an adjustment and that the CSEA recommendation was otherwise erroneous because it failed to account for any self-employment income or expenses incurred by Donald.  The court additionally found that, despite Donald offering voluminous documents and other evidence regarding the rental business, he had not provided the court with objective and reasonable documentation of his actual income and expenses. Ultimately, the court determined that the payments listed on the handwritten ledger were unverifiable and were not credible evidence of business expenses associated with the rental properties.  The court indicated it would credit Donald for all actual receipts he submitted that were paid in cash, and all receipts that could be verified by payments from Donald's bank account.

{¶8}    Ultimately, the court found that Donald was not operating the rental business at a loss and that his net income from self-employment was approximately $32,000.  After entering all of its findings concerning the parties' income, including the income from both parties' salaried positions, the court determined that Donald's recalculated child support order would be approximately 13 percent less than the prior order.  Donald asked for a downward deviation from this amount and argued that the child support order was unfair to him because Susana was benefitting financially from child support and the amount of the support payment left him in a poor financial condition.

{¶9}    The court rejected all of Donald's various arguments suggesting that Susana was living a "luxurious lifestyle" because of the child support order.  The court further rejected Donald's claims that he was in in financial distress because of the child support

order. Instead, the court found that Donald was actually in a much better financial position than he had been at the time of the divorce. For the same reasons, the court denied Donald's request to reduce or eliminate his spousal support order.

{¶10} Finally, the court addressed Susana's request for attorney's fees. The court agreed that Susana was entitled to fees and that the reasons in support of an award of fees were "numerous." These reasons included Donald's improper request for an administrative review, Donald's repeated advancement of meritless claims and factual assertions, and Donald's conduct at the hearing.

{¶11} However, the court observed that because Donald had demonstrated an entitlement to a reduction in child support, his motion had some merit and Susana should have to pay some of her attorney fees. Upon review of Susana's attorney's billings records, which were submitted to the court with written closing argument, the court determined that Donald should pay $23,637.47, or roughly half, of Susana's attorney's fees. Donald appeals, raising ten assignments of error, some of which this court will address out-of-order and collectively.

{¶12} Assignment of Error No. 1:

{¶13} THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING PLAINTIFF'S ATTORNEY'S FEES BECAUSE THE APPELLEE FAILED TO SHOW THAT THE APPELLANT'S APPEAL WAS FRIVOLOUS.

{¶14} Assignment of Error No. 10:

{¶15} PURSUANT TO R.C. 3105.73(A), THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING ATTORNEY'S FEES TO APPELLEE BECAUSE THE APPELLEE FAILED TO SHOW THAT THE AWARD WAS NOT EQUITABLE.

{¶16} In his first and tenth assignments of error, Donald argues that the court erred in ordering him to pay Susana's attorney's fees. Donald contends that he did not engage

in "frivolous conduct" justifying sanctions and that Susana failed to show that an award of attorney fees, under R.C. 3105.73, would be equitable.

{¶17} With respect to sanctions under R.C. 2323.51, any party in a civil action, who claims to have been adversely affected by "frivolous conduct," may move the court for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action. R.C. 2323.51(B)(1). "Frivolous conduct" includes the following conduct by a party to a civil action:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a).

{¶18} Review of a trial court's decision regarding frivolous conduct involves mixed questions of law and fact. *Winn v. Wilson*, 12th Dist. Butler No. CA2016-03-066, 2016-Ohio-7545, ¶ 11. The trial court's factual determinations are accorded a degree of deference and will not be disturbed on appeal if there is competent, credible evidence in the record to support them. *Id.* citing *Judd v. Meszaroz*, 10th Dist. Franklin No. 10AP-1189, 2011-Ohio-4983, ¶ 18. The appellate court applies a de novo review to legal questions,

- 6 -

such as whether a party's conduct satisfies the statutory definition of frivolous conduct. *Id.*

{¶19} Upon review of the trial record, this court finds that the domestic relations court did not err in granting sanctions. As described at length by the court in its decision, there were numerous reasons supporting an award of attorney fees. Donald improperly requested an administrative review by the CSEA, which the court found was a blatant attempt to relitigate and overturn the court's earlier decision on child support. In this regard, Donald had repeatedly informed the court that he would continue to challenge the court's orders on child support and spousal support until the court "got it right," i.e. by giving Donald what he wanted. The court noted that Donald had admitted this to be true, both in his filings with the court and his testimony during court hearings.

{¶20} Furthermore, Donald justified his request for a deviation from the child support worksheet based on the claim that his support payments resulted in severe financial distress. However, the court found this assertion to be false. In fact, as born out at the hearing, Donald's financial condition had considerably improved since the divorce. He was not in severe financial distress; he simply did not want to pay child or spousal support. The record also supports the conclusion that Susana was forced to defend against Donald's meritless claims and obtain extensive discovery to vet those claims. The process of vetting those claims was overly complicated due to Donald's failure to maintain or produce comprehensible business records.

{¶21} Moreover, and as was abundantly clear upon this court's review of the two days of hearing in this matter, Donald needlessly prolonged the proceedings by engaging in repetitive and argumentative questioning, by ignoring the court's rulings on objections, and by ignoring a multitude of admonitions and reminders by the court to testify, not argue his case. Finally, Donald's testimony was earmarked by evasiveness in answering questions concerning his own finances. In sum, Donald's conduct served merely to harass,

caused unnecessary delay and a needless increase in the cost of litigation, was not warranted under existing law, and was based upon allegations that lacked factual support.

{¶22} For the same reasons, the domestic relations court had the discretion to award attorney fees under R.C. 3105.73(B), which requires that such an award be "equitable." Here, the domestic relation court's decision fully justifies such an award given that Donald's conduct caused Susana to expend time and resources defending meritless claims. Thus, an award reimbursing her for a portion of her attorney fees was fair. This court overrules Donald's first and tenth assignments of error.

{¶23} Assignment of Error No. 2:

{¶24} THE TRIAL COURT ABUSED ITS DISCRETION AWARDING PLAINTIFF'S ATTORNEY'S FEES BECAUSE THE COURT FAILED TO ALLOW APPELLANT TO CROSS-EXAMINE [APPELLEE'S ATTORNEY] REGARDING REASONABLE [ATTORNEY'S FEES] AND [APPELLEE'S ATTORNEY] FAILED TO SUBMIT [AN] AFFIDAVIT IN SUPPORT OF FEES.

{¶25} Donald argues that the court erred in awarding attorney fees because the award was based solely upon the submission of Susana's attorneys billing records, no affidavit was filed, and he was not permitted to cross-examine Susana's attorney concerning his fees. The party seeking an award of attorney fees has the burden of proving the reasonableness of the fees. *Caparella-Kraemer & Assoc. v. Grayson*, 12th Dist. Butler No. CA2019-11-184, 2020-Ohio-3498, ¶ 26; *Levy v. Seiber*, 12th Dist. Butler Nos. CA2015-02-019, CA2015-02-021, and CA2015-02-030, 2016-Ohio-68, ¶ 66; *Falk v. Falk*, 10th Dist. Franklin No. 08AP-843, 2009-Ohio-4973, ¶ 39. A court must base its determination of reasonable attorney's fees upon the "actual value of the necessary services performed, and there must be some evidence which supports the court's determination." *Grayson* at *id.*, citing *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App. 3d 313, 323

(10th Dist.1995). To calculate attorney's fees, the court must engage in a two-step process of determining the "lodestar" amount, i.e., the number of hours reasonably expended multiplied by a reasonable hourly rate, and then determining whether to adjust that amount based upon the factors set forth under Prof.Cond.R. 1.5(a). *See Levy* at ¶ 67.

{¶26} Towards the end of the second day of the hearing, Susana's attorney asked the court how it wished to address the matter of Susana's request for attorney fees. The court instructed counsel to prepare and submit affidavits with the written closing argument. Susana thereafter filed her written closing arguments and attached her attorney's billing records. However, she did not attach any attorney affidavit to that filing. Instead, Susana referred to an exhibit at the trial, which was her attorney's affidavit in which he averred as to the reasonableness of his own fees and the accuracy of his billing invoices. However, this exhibit was never introduced into evidence at the hearing.

{¶27} In his written closing argument, Donald objected to the lack of a supporting affidavit and also argued that he should have been permitted to cross-examine Susana's attorney concerning his fee. This argument was not addressed by Susana in her reply in support of closing argument, or the court in its decision.

{¶28} Upon review of the record, there was insufficient evidence presented to the court establishing the reasonableness of Susana's attorney's hourly rate or the reasonableness of the attorney time expended on the case. Moreover, Donald had no practical means of challenging the reasonableness of the attorney fee award based on the procedures used in this case. Consequently, this court sustains Donald's second assignment of error and reverses and vacates the portion of the court's decision with respect to the amount of attorney fees awarded to Susana. The matter is remanded to the domestic relations court for purposes of conducting an evidentiary hearing to determine a reasonable attorney fee award, at which hearing Donald will have the opportunity to contest

the reasonableness of the fees sought.

{¶29} Assignment of Error No. 3:

{¶30} THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S REQUEST FOR A REDUCTION IN CHILD SUPPORT BECAUSE IT FAILED TO CONSIDER APPELLANT'S NECESSARY AND ORDINARY BUSINESS EXPENSES.

{¶31} Assignment of Error No. 5:

{¶32} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ASSUMING THE CASH BALANCES DON'T ADD UP AND ASSUMING ALL CASH PAYMENTS TO CONTRACTORS SHOULD BE DISMISSED.

{¶33} In his third and fifth assignments of error, Donald contends that the domestic relations court erred in determining the amount of his net income for purposes of calculating his child support payment. Specifically, Donald argues the court failed to credit him for cash paid to workers and contractors. He argues that the handwritten ledger presented at trial was sufficient proof that these transactions occurred and that the evidence showed that he ran his rental business at a loss. Therefore, he contends that the court should not have attributed him any net income from self-employment.

{¶34} A domestic relations court has wide discretion regarding child support obligations, and the decision of the trial court will not be disturbed absent an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶35} The domestic relations court determined that Donald's net income from the rental property business was approximately $32,000. It arrived at this figure by finding $58,700 in gross income from rent payments. The court then deducted approximately

$11,500, which it found were expenses that Donald paid in cash and which were corroborated through receipts generated by third parties. The court further deducted approximately $15,000, which it found were the expenses paid from Donald's checking account and which were further corroborated by documents submitted into evidence.

{¶36} This court did not credit Donald for the alleged cash expenses he attempted to prove through a combination of his testimony and the handwritten ledger. The court's decision details its exhaustive efforts attempting to make sense of the financials of Donald's rental property business. However, due to Donald's lack of record-keeping, or poor record-keeping, he was unable to present the court with a coherent accounting of the business. Instead, the court was left to sift through a significant volume of miscellaneous evidence, tax returns, bank statements, receipts, and summaries, in an effort to determine what the court could credibly find to be a legitimate rental property expense.

{¶37} The court reasonably concluded that the handwritten ledger was not credible evidence of cash expenses related to the rental properties. In most instances, the ledger contains such minimal information concerning the cash expenditure that it is impossible to determine what work was performed. In other words, apart from Donald's self-serving testimony that he paid a cash expense and that it was rental-related, there was no independent way for the court or Susana to verify that the expense was legitimate. Donald did not produce receipts, invoices, or other documents that might corroborate those expenses. He did not call any witnesses who could testify as to their work and corroborate that they received payment for expenses related to the rental properties. There were no corresponding letter or e-mail invoices, no quotes or estimates for work, and no contracts or estimates generated by the persons who allegedly performed the work. Additionally, many of the handwritten signatures were illegible and some claimed expenses contained no signature. Finally, while reviewing bank records, Donald guessed at what many of the

expenses were for, telling the court, "you're going to have to trust me."  In short, Donald failed to present the court with credible, verifiable evidence of numerous claimed business expenses.

{¶38}  Donald cites *Larkin v. Larkin*, 2d Dist. Greene No. 2013-CA-54, 2014-Ohio-957, for the proposition that a domestic relations court abuses its discretion by failing to "address" business-related expenses.  Donald does not explain why *Larkin* is relevant, but this court finds it distinguishable.  In *Larkin,* the appeals court found that the domestic relations court abused its discretion by failing to deduct certain business expenses.  *Id.* at ¶ 10. *Larkin* is not relevant because the domestic relations court's decision there was based on failing to include *proven* expenses in its calculation of net income.  In this case, the domestic relation's court's decision was based on Donald's *failure to prove* his business expenses.  Based upon the foregoing, this court does not find that the domestic relations court abused its discretion in failing to credit Donald for all the expenses he sought to establish.  This court overrules Donald's third and fifth assignments of error.

{¶39}  Assignment of Error No. 4:

{¶40}  THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S REQUEST TO HAVE PLAINTIFF COMPLETE AN AFFIDAVIT OF INCOME AND EXPENSES AND IMPUTED [sic].

{¶41}  Donald contends that the court abused its discretion by using the child support worksheet to determine the amount of his child support payment because it "inflates his child support obligation, enabling [Susana] to make a huge profit from the child support payments."  However, as the domestic relations court noted in its decision, the Revised Code required the court to complete the child support worksheet.  R.C. 3119.02.  The court cannot abuse its discretion by adhering to the law.  This court overrules Donald's fourth assignment of error.

{¶42} Assignment of Error No. 6:

{¶43} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO ADMIT DEFENDANT'S REQUEST TO HAVE A PARTIAL TRANSCRIPT OF PLAINTFF'S DEPOSITION SUBMITTED AS EVIDENCE.

{¶44} Donald argues that the court erred in not allowing him to introduce a partial deposition transcript into evidence. Decisions regarding the admission or exclusion of evidence rest within the sound discretion of the domestic relations court. *Koehler v. Koehler*, 12th Dist. Brown Nos. CA2017-12-016 and CA2017-12-017, 2018-Ohio-4933, ¶ 45.

{¶45} Donald testified during his case in chief that his monthly child support and spousal support payments were "killing" him and that his child support payment paid for "one hundred percent" of the children's monthly expenses. Donald then began to testify about a statement that Susana made in her deposition and referred to one of his trial exhibits, which was an excerpt from that deposition and apparently contained the statement to which he was referring. Susana's counsel objected; he noted that during the deposition he had objected to Donald's question prompting Susana's statement and further objected on grounds that the deposition had not been authenticated. The court sustained the objection.

{¶46} Donald argues that he was entitled to submit the deposition excerpt into evidence pursuant to Civ.R. 32, which governs the use of depositions in court proceedings and provides that a partial or complete deposition, "so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition* * *." Civ.R. 32(A). Donald further argues that the rule provides that, "[a]ny deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent

as a witness." Civ.R. 32(A)(1).

{¶47} Donald argues that he was entitled to read a portion of Susana's deposition testimony into the record pursuant to Civ.R. 32(A)(1) because he was attempting to impeach Susana's testimony. However, at the time of the objection, Donald was not using the deposition excerpt to contradict or impeach Susana's testimony as a witness. Instead, Donald was attempting to impeach Susana's credibility while he testified in his case-in-chief. Thus, Civ.R. 32(A)(1) in inapplicable.

{¶48} Regardless, even if this court had instead found that it was erroneous to exclude the partial transcript, this court would not find that Donald suffered any prejudice. Donald's apparent purpose in presenting the transcript or referring to Susana's deposition testimony, was to show that Susana testified that Donald's child support payments paid for "all" of the children's expenses. However, this issue was thoroughly examined at the hearing through both Donald's and Susana's testimony. It was clear that both parents supported the children financially and that Susana's income and Donald's child support payments were used to pay for various expenses related to supporting the children, including such basic needs as food, shelter, and transportation. Donald's suggestion that his child support payments paid for the children's support, exclusively, and that Susana did not contribute financially to the children's support, lacks any merit. Accordingly, the introduction of this partial deposition transcript was not "critical" and would not have changed the outcome. The domestic relations court did not abuse its discretion in sustaining Susana's objection to the partial deposition transcript. This court overrules Donald's sixth assignment of error.

{¶49} Assignment of Error No. 7:

{¶50} THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION [BY] NOT ALLOWING DEFENDANT'S EXPERT WITNESS (CPA ROBERT

SICKING) TO TESTIFY AND EXCLUDING HIS EXPERT REPORT.

{¶51} Donald argues that the court erred by excluding his expert report and not allowing his expert witness to testify at the hearing. The trial court's decision on whether to admit or exclude expert testimony and evidence is reviewed by this court for an abuse of discretion. *See Herzner v. Fischer Attached Homes, Ltd.*, 12th Dist. Clermont No. CA2007-08-090, 2008-Ohio-2261, ¶ 7.

{¶52} Prior to the hearing, Donald filed a liminal motion asking the court to exclude Susana's expert testimony and written report on the basis of Susana's alleged failure to comply with a pre-trial discovery order concerning disclosure of expert opinions. The court and parties discussed the issue on the day of the hearing. The pre-trial order required disclosure of experts and their detailed written report on July 1, prior to the August 27 hearing date. However, Susana's counsel apparently misunderstood or misread the order and only provided Donald with the identity of Susana's expert witness by the July 1 deadline. Susana's counsel then provided Donald with her expert's written report seven days prior to the hearing date.

{¶53} When the court asked Donald whether he had complied with the pre-trial order, he claimed to have done so and indicated he provided Susana's counsel with his expert's detailed written report on July 1. However, Susana claimed that what she received from Donald was not a detailed written report.

{¶54} The court then reviewed Donald's written report, which was a letter from his accountant (and expert witness) and stated, in its entirety, "I've now had a chance to review your 2018 federal income tax. Opinion is it's correct. Consistently prepared with the two prior years." The court found that this letter was not a detailed written report and therefore found that neither Donald nor Susana had complied with the pre-trial order. The court therefore ruled that it would exclude both expert reports from evidence.

{¶55}   Later in the trial, the parties discussed whether the experts would be permitted to testify at all.  The court indicated that it would not permit experts to testify concerning any matters that had not been disclosed to the other side by the pre-trial order date.  Donald did not object to this decision and explicitly announced his agreement that neither party would be introducing any expert testimony.

{¶56}   This court does not find that the domestic relations court abused its discretion in excluding Donald's expert testimony and evidence.  As described above, Donald failed to comply with the pre-trial order by failing to provide Susana with a detailed written report.  The same reasoning would justify the court's decision to exclude expert testimony.  Moreover, Donald agreed with the court's decision to exclude both parties' expert witnesses, thus he cannot now claim it was error.  This court overrules Donald's seventh assignment of error.

{¶57}   Assignment of Error No. 8:

{¶58}   THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION NOT REDUCING DEFENDANT'S ALIMONY PAYMENT TO PLAINTIFF WHEN PLAINTIFF IS SIGNIFICANTLY MORE WEALTHY THAN WHEN DIVORCE DECREE WAS SIGNED AND HAS MORE IN HER RETIREMENT THAN DEFENDANT AND IS 10 YEARS YOUNGER.

{¶59}   Donald argues that the court abused its discretion in not reducing his spousal support payment where Susana now earns more than she did at the time of the divorce, where she has $100,000 more in her retirement account than he does even though he is ten years older than she, and where she has twice as much money in her checking account.  Donald cites R.C. 3105.18(C)(1)(c) and (d), which require the court to consider the age and retirement benefits of the parties in determining whether an award of spousal support is appropriate.

{¶60} Donald failed to present evidence at trial indicating an inability to pay spousal support. To the contrary, the evidence at trial indicated that Donald was in better financial condition than he was at the time of the divorce. Additionally, Donald indicated in post-trial briefings that he had obtained new salaried employment and was earning a greater salary than Susana. Finally, the evidence introduced at trial indicated that the reason that Donald's retirement account was lower than Susana's, despite their relative age difference, was because of his decision to invest hundreds of thousands of dollars of his retirement account in Bitcoin, which investment was ill-timed and resulted in a significant paper loss. This court finds no abuse of discretion in the court's decision not to reduce or eliminate spousal support and overrules Donald's eighth assignment of error.

{¶61} Assignment of Error No. 9:

{¶62} THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING DEFENDANT'S REQUEST TO ADOPT THE AMENDED ADMINISTRATIVE RECOMMENDATION FOR A REDUCTION IN CHILD SUPPORT, RESULTING IN AN ABUSE OF DISCRETION BY IGNORING CLEAR AND CONVINCING EVIDENCE.

{¶63} Donald argues that the court abused its discretion by rejecting the CSEA's administrative recommendation on child support. Donald contends that the CSEA had the authority to amend the court's child support order.

{¶64} As the court noted in its decision, at the time of Donald's request for an administrative review, the applicable regulations then in effect, set forth in O.A.C. 5101:12-60-05.1(E), provided that a party to a child support order could initiate an administrative review less than 36 months after the issuance of a child support order only under 14 circumstances set out in the rule. Donald initiated the administrative review only months after its issuance. The court found that Donald failed to establish any of the fourteen circumstances justifying early review.

{**¶65**} In support of his argument that the court abused its discretion in failing to adopt the administrative recommendation, Donald fails to specify which exception he claims permitted the early administrative review. In his reply brief he clarifies that the CSEA determined that "one or more" of the 14 exceptions applied but does not identify which exception applied. This court perceives no abuse of discretion in the domestic relations court's decision finding that CSEA lacked legal authority to conduct the administrative review. Regardless, this issue is irrelevant because the court determined that the CSEA failed to account for any of Donald's self-employment income. This court overrules Donald's ninth assignment of error.

{**¶66**} Judgment affirmed in part and reversed in part.

S. POWELL and PIPER, JJ., concur.