[Cite as *In re T.C.*, 2023-Ohio-560.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN RE:                                          :

    T.C., et al.                                :               CASE NO. CA2022-04-016

                                         :               <u>O P I N I O N</u>
                                               2/27/2023

                                         :

                                         :

                                         :

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2016 JG 23048

James R. Hartke, for appellant.

Stagnaro Hannigan Koop, Co., LPA, and Michaela M. Stagnaro, for appellees.

**HENDRICKSON, J.**

{¶ 1} Appellant, the aunt of T.C. and I.C., appeals a decision of the Clermont County Juvenile Court denying her request for attorney's fees. For the reasons discussed below, we affirm the trial court's decision.

{¶ 2} In September 2016, the juvenile court granted legal custody of sisters, T.C. and I.C., to their maternal grandparents because the girls' mother was unfit to care for them. In July 2017, the grandparents filed a motion for modification of the custody order,

requesting that the court grant legal custody of T.C., the older sister, to her maternal aunt. The motion stated that the girls were having problems stemming from a lack of maternal care in their early childhood that was now manifesting in an unhealthy and competitive relationship between the sisters. The motion indicated that the girls' counselor had recommended that the girls reside in different homes.

{¶ 3} At a hearing on the motion, the parties informed the court that T.C. had been living with her aunt and that the parties had been making arrangements for the sisters to visit each other. The aunt indicated that she and the grandparents had "open communication." The court discussed the relationship the counselor had with the girls and the aunt informed the court that she would have no issues with T.C. returning to the same counselor if the need arose in the future. During these proceedings the parties were in agreement on the issues.

{¶ 4} The court granted legal custody of T.C. to her aunt in September 2017. The order stated that the grandparents and aunt "shall make arrangements for the siblings to have regular, ongoing contact with each other." For a period of time, the girls visited regularly with each other. However, on June 12, 2018, grandfather and aunt had a discussion regarding T.C.'s ongoing problems that became acrimonious. Based on the record, it appears that some of the disagreement involved the issue of T.C. returning to counseling.

{¶ 5} On June 14, 2018, two days after this conversation, aunt's legal counsel sent a letter to the grandparents which informed the grandparents that he was legal counsel for the aunt. The letter stated that the aunt had asked her attorney to notify "both of you to not have any further contact with [the aunt] and her family" because of threats made during the June 12 conversation. The letter further stated that "Contact is defined as any communication whatsoever, by U.S. mail, email, phone, text, on Facebook, fax or through

any person or friend, otherwise a restraining order will be filed with the court." The attorney reiterated in the letter that the aunt was requesting the grandparents "to simply not have any contact with her" and "if you continue to contact her I will be forced to take further legal action."

{¶ 6} After receiving this letter, the grandparents filed motions in the juvenile court for contempt of the visitation order and for more specific sibling/companionship time. The motion alleged that the aunt had demanded no contact and the children could not visit without contact/communication. In addition, the motion alleged that the aunt had informed the grandfather that T.C. had engaged in extremely disturbing behavior and the grandparents were concerned because T.C.'s behavior had deteriorated after she moved in with the aunt. The motion further alleged that the grandparents had asked the aunt to seek therapy for T.C., but the aunt began isolating T.C. from the family. In addition, the motion alleged that the aunt had told grandfather she did not want T.C. in counseling because the aunt would lose her other children.

{¶ 7} Aunt's counsel responded to the motion and for over two years the parties continued to litigate in the juvenile court.[1] During this time period, the grandparents filed a motion for custody of T.C. on the basis that when the girls' counselor had recommended separating the girls, they were unable to provide separate bedrooms for each girl, but they were now able to do so. In addition, both parties filed motions for attorney fees.

{¶ 8} At a hearing on August 10, 2020, the parties stipulated to an agreement they had reached that resolved all the issues in the case, except for the issue of attorney fees.

---

1. We note that aunt's counsel's initial response was to file a motion to dismiss the grandparent's motion, which was denied by the magistrate, then again by the juvenile court after objections. Aunt's counsel then filed a complaint for contempt of visitation and interference with custodial rights and for fraud against the grandparents. Aunt's counsel subsequently filed a number of motions and objections to the magistrate's decisions, including an objection to the magistrate's decision to appoint a guardian ad litem. At a May 21, 2019 hearing on this objection, the magistrate indicated the case was being removed to the judge to "remove the opportunity to object to everything."

The agreement was eventually adopted by the trial court on November 3, 2020. The parties agreed to file written arguments on the attorney fees issue and agreed that the hourly amount charged by each counsel was reasonable. Grandparents' attorney filed a motion for $3,725 in attorney fees, which the attorney alleged reflected the time spent responding to the frivolous filings of aunt's counsel. Aunt's counsel filed a motion for $79,030.85 in attorney fees, which he later amended to a total amount of $97,824.35.

{¶ 9} The trial court issued a decision regarding the attorney fee issue on March 14, 2022. The court determined that neither party had engaged in frivolous conduct, nor was there any finding that either party acted in bad faith or vexatiously. Accordingly, the trial court did not award attorney fees to either party.

{¶ 10} Aunt's attorney now appeals the trial court's decision to not award attorney fees in his favor. He raises two assignments of error for our review:

{¶ 11} THE CLERMONT JUVENINLE [SIC] TRIAL COURT, ("TRIAL COURT") DETERMINED THE ONLY BASIS FOR ATTORNEY FEES IS UNDER OHIO REVISED CODE SECTION 2323.51 (T.d. 149, P.1). THE TRIAL COURT ERRS IN INTERPRETING THE LAW UNDER R.C. 2323.51 TO THE PREJUDICE OF APPELLANT [AUNT] BY RULING "THERE WAS NO EVIDENCE PRESENTED BY EITHER PARTY, AND, AS A RESULT, NO FINDINGS BY THIS COURT, THAT EITHER PARTY'S CONDUCT WAS FRIVOLOUS NOR WAS THERE ANY FINDINGS THAT EITHER PARTY ACTED IN BAD FAITH OR VEXATIOUSLY." (T.d. 149, P.1).

{¶ 12} In his brief, aunt's attorney states that the first assignment of error has two parts; the first involves interpretation of the law as to frivolous conduct and the second is whether aunt submitted evidence to support her claim. We note that although aunt's attorney states "interpretation of the law as to frivolous conduct and standard of review" are issues in the first part of the assignment of error, the brief cites R.C. 2323.51, the frivolous

conduct statute, along with case law regarding frivolous conduct, but does not argue how the trial court erred in interpretation of the law.

{¶ 13} The second argument under this assignment of error involves the trial court's determination that there was no evidence to support a finding of frivolous conduct. Pursuant to R.C. 2323.51, a party in a civil action who claims to have been adversely affected by "frivolous conduct," may move the court for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the action. R.C. 2323.51(B)(1). As defined by R.C. 2323.51(A)(2)(a), frivolous conduct includes the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶ 14} On appeal, a trial court's decision on whether to award sanctions under R.C. 2323.51 will not be reversed absent an abuse of discretion. *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*, 139 Ohio St.3d 106, 2014-Ohio-1564, ¶ 10. "While the ultimate decision to impose sanctions for frivolous conduct rests within the trial court's discretion, a review of what actually constitutes frivolous conduct under R.C. 2323.51 may necessarily

require a factual and legal inquiry." *Internatl. Union of Operating Engineers, Local 18 v. Laborers' Internatl. Union of N. Am., Local 310*, 8th Dist. Cuyahoga No. 104774, 2017-Ohio-1055, ¶ 17. Review regarding the existence of frivolous conduct involves mixed questions of law and fact. *Lykins v. Lykins*, 12th Dist. Clermont No. CA2020-03-009, 2021-Ohio-274, ¶ 17-18. The trial court's factual determinations are accorded a degree of deference and will not be disturbed on appeal if there is competent, credible evidence in the record to support them. *Id.* The appellate court applies a de novo review to legal questions, such as whether a party's conduct satisfies the statutory definition of frivolous conduct. *Id.*

{¶ 15} Aunt's attorney argues the trial court erred in determining that there was no evidence of frivolous conduct. He contends that the grandparents engaged in frivolous conduct by filing the motions for modification of visitation and contempt when they filed the custody motion. The basis for this argument is that the grandparents filed false and unsupported allegations against the aunt.

{¶ 16} However, there are multiple problems with this argument. First, the argument is based on the presumption that the grandparent's version of the facts was false. This case was ultimately settled and no factual findings were made by the trial court, so any factual argument regarding what happened between the parties fails. Second, the argument fails on counsel's premise that the grandparents had no evidence to support their claims. Although counsel points to deposition testimony in which he extensively questioned the grandparents regarding the lack of "proof" of their factual allegations, if a factual hearing had been held in this matter, the grandparents would have been able to testify regarding their conversations with aunt and their observations of T.C.'s behavior. This testimony alone, if believed by the trial court, would have been sufficient to support the motions.

{¶ 17} Finally, after review of the record, we find no evidence of frivolous conduct on the part of grandparents. Frivolous conduct under R.C. 2323.51(A)(2) is judged under an

objective, rather than a subjective standard and must involve egregious conduct. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, ¶ 15. Frivolous conduct is not proved merely by winning a legal battle or by proving that a party's factual assertions were incorrect. *Id.* Likewise, frivolous conduct does not exist merely because a claim is not well-grounded in fact. *Ohio Power Co. v. Ogle*, 4th Dist. Hocking No. 12CA14, 2013-Ohio-1745, ¶ 29-30. Instead, the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action. *DiFranco* at ¶ 15. A claim is frivolous when no reasonable lawyer would have brought the action in light of existing law. *State ex rel. Chrisman v. Clearcreek Twp.*, 12th Dist. Warren No. CA2013-03-025, 2014-Ohio-252, ¶ 10.

{¶ 18} Although aunt's counsel argues on appeal that there was no evidence that aunt denied visitation before the grandparents' motion was filed, it is obvious that the letter from aunt's counsel left the grandparents in an unwinnable position. Because there was no formal visitation schedule, in order to request visitation, grandparents would need to contact aunt. However, the letter from aunt's counsel was abundantly clear that grandparents were not to contact aunt, and if they did so, legal action would be taken. No exception for visitation discussion was provided in the letter. A party is entitled to file a motion for contempt where he has a good faith argument that the opposing party has failed to comply with a lawful court order. *In re T.D.A.J.*, 12th Dist. Butler No. CA2015-04-075, 2015-Ohio-4919, ¶ 37. The grandparents' motions were an appropriate response, and perhaps their best option, to aunt's counsel's letter.

{¶ 19} Likewise, we find no frivolous conduct in the grandparents' motion for custody. This motion was filed nearly a year into what should have been a relatively simple visitation case. Grandparents' request for custody reflects a concern for T.C. and her best interest. Whether the facts underlying these concerns were present was never factually determined in the case. Although, even so, as mentioned above, incorrect factual assertions alone do

not constitute frivolous conduct. Furthermore, grandparents' testimony would have been sufficient evidence to support their claims at a hearing on the issue.

{¶ 20} Because the trial court did not err in determining that there was no evidence of frivolous conduct, the first assignment of error is overruled.

{¶ 21} THE CLERMONT JUVENINILE [SIC] COURT ERRS TO THE PREJUDICE OF APPELLANT [AUNT] BY RULING THERE IS NO THIRD-PARTY ATTORNEY CALLED AS A WITNESS TO TESTIFY TO THE REASONABLENESS OF THE FEES CHARGED, BASED ON LOCAL MARKET RATES AND HOURLY RATES FOR THE TYPE OF LEGAL SERVICES ENDERED [SIC] (T.d. 149, P.2) AND NO EVIDENCE PRESENTED AS TO ABILITY OF OPPOSING PARTY TO PAY ATTORNEY FEES (T.d. 149 P.2).

{¶ 22} In the second assignment of error, aunt's attorney argues that the juvenile court erred in determining that there was no evidence to support the reasonableness of the attorney fees and the opposing party's ability to pay when the trial court accepted the parties' stipulation at a prior hearing that the attorney fees rates were reasonable.

{¶ 23} However, as we have determined above, there was no frivolous conduct in this case, and therefore no basis to award attorney fees. Accordingly, we find the second assignment of error is moot and need not be considered.

{¶ 24} Judgment affirmed.


PIPER, P.J., and BYRNE, J., concur.