[Cite as *Lykins v. Lykins*, 2023-Ohio-4469.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| SUSANA E. LYKINS, | : | |
| Appellee, | : | CASE NO. CA2022-07-034 |
| | : | O P I N I O N |
| - vs - | | 12/11/2023 |
| | : | |
| DONALD H. LYKINS, | : | |
| Appellant. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2015 DRA 00621

Heyman Law, LLC, and D. Andrew Heyman, for appellee.

Donald H. Lykins, pro se.

**BYRNE, J.**

{¶ 1} Donald Lykins ("Donald") appeals from the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, which modified his child support obligation and awarded attorney fees to his ex-wife, Susana ("Susana"). For the reasons that follow, we affirm the domestic relations court's decision.

## I. Factual and Procedural Background

{¶ 2} The parties wed in 1996 and divorced in 2017. Two daughters were born of the marriage. Both were still minors as of the dates of the relevant motions and the decision filed in this matter.[1] As suggested by the history of appeals to this court, the divorce and the post-decree proceedings have been highly contentious.[2]

### A. The Relevant Motions

{¶ 3} Relevant to this appeal, in June 2021, Donald moved for a reduction of his child support obligation. Donald also moved to modify his parental rights and claimed a change of circumstances in that, among other things, Susana was cohabitating with her boyfriend and her boyfriend's children.

{¶ 4} In response, Susana admitted a change of circumstance due to cohabitation. However, Susana separately moved the court to modify parental rights to eliminate Donald's parenting time unless requested by the children. Susana also moved the court to modify the child support order "to reflect the parenting time exercised by each parent."

{¶ 5} Prior to the hearing on these issues, Susana also moved the court to award her attorney fees and costs in conjunction with litigating these issues. Susana cited two statutes in support of her attorney fee request. Those two statutes were R.C. 2323.51, which authorizes a trial court to award attorney fees in response to frivolous conduct in a civil action, and R.C. 3105.73(B), which authorizes a trial court to award attorney fees on an equitable basis in post-decree proceedings.

---

1. The record indicates that as of the date of the publication of this opinion, the older daughter is no longer a minor.

2. *Lykins v. Lykins*, 12th Dist. Clermont Nos. CA2017-06-028 and CA2017-06-032, 2018-Ohio-2144; *Lykins v. Lykins*, 12th Dist. Clermont No. CA2019-07-060, 2020-Ohio-2769; *Lykins v. Lykins*, 12th Dist. Clermont No. CA2020-03-009, 2021-Ohio-274.

**B. The Hearing**

{¶ 6}   The matter proceeded to a three-day hearing in February and March 2022 on the modification of child support and attorney fees.[3]   Donald and Susana both testified in support of their respective motions to modify child support.  Both testified concerning their then-current wages.  Susana testified concerning her current expenses related to raising the daughters, which included the costs of basic needs as well as various extracurricular activities the daughters were engaged in at the time.  Donald testified as to his expenses related to his parenting time.

{¶ 7}   Donald owned rental properties, which he claimed to be operating at a loss. Susana disputed this claim.  She called Robert Bigner, a certified general real estate appraiser, to testify as to the fair market rental value of Donald's 15 rental properties/units. Bigner testified that he conducted an exterior-only examination of the properties.  He then found comparable rental properties.  Based on his comparison, Bigner opined that the annual fair market rental value of all the properties was nearly $260,000.  However, on Donald's Schedule E to his 2020 federal income tax return, which was introduced into evidence at the hearing, Donald claimed annual rental income of only $109,580.  Donald also claimed expenses totaling $164,618.

{¶ 8}   Donald called Lisa Bruewer during his case.  Bruewer testified to seeing Donald pay contractors who worked on his rental properties in cash.  Donald also called his certified public accountant, Robert Sicking, who testified that he reviewed Donald's federal income tax return from 2020 and found it "consistent" with his prior returns.  Sicking testified that he had not prepared the 2020 return and had not reviewed any supporting documents.

---

3. The issue of modifying the allocation of parental rights was heard at a different two-day hearing in February 2022.  In a March 2022 decision, the court denied Donald's and Susana's request to modify parental rights as requested but nonetheless modified the parenting time provisions currently in effect based on the children's best interest.  That decision is not before us in this appeal.

{¶ 9}  Finally, Susana's two attorneys testified as to their work on the case, their hourly rates, and their billings.

## C.  Domestic Relations Court's Decision

### 1.  Child Support

{¶ 10}  In its decision, the domestic relations court first addressed Donald's argument that Susana was "profiting" from his child support payment.  The court found that Susana earned $95,000 per year and was providing the medical and dental insurance for the children.  The court described all the evidence introduced at the hearing that related to Susana's monthly expenditures for the children.  The court found those expenditures reasonable and not extravagant.  Between vehicle expenses (the older daughter was now driving a vehicle), clothing, cell phones, hygiene products or services, laptops, school fees, allowances, sports and leisure activities, and health insurance, the average monthly total expended by Susana for the children was $2,863.01.  This figure was approximately $900 more than Donald's recalculated monthly child support obligation based upon the child support worksheet.  Thus, the court rejected the argument that Susana was "profiting" from child support.[4]

{¶ 11} Regarding Donald's income, the domestic relations court found that Donald had accepted a position earning $160,000 per year and that his gross income for the prior year (2020) was $362,358.  This included $194,673 in wages, $20,405 in dividends and $154,780 in capital gains.  The court noted that Donald listed no income from his rental business and that Donald claimed that it had lost him money in 2020.

{¶ 12}  Regarding rental business income, the court observed that this was the third

---

4.  The record reflects that Donald has, throughout the post-decree proceedings, repeatedly asserted this argument of his ex-wife "profiting" off his child support payments.  This claim has been repeatedly rejected by the domestic relations court for lack of evidentiary support.

time in the past five years that the parties had litigated the issue of Donald's rental business income. As before, Donald claimed the rental properties lost money each year despite having virtually no debt connected to the properties.

{¶ 13} The court found that Donald failed to provide any documentary proof to corroborate his claims of rental business expenses exceeding rental business income other than his federal tax return forms. Notably, the court found that Donald has "consistently refused to maintain normal business records to corroborate his income and expenses for the rental properties [which] leads to the reasonable inference that he is not reporting the full income of the rental properties and is overstating his expenses."

{¶ 14} The court noted that Susana was asking it to impute gross income of $258,840 to Donald based on Bigner's testimony on the fair rental value of Donald's rental properties. Donald, on the other hand, was asking the court to impute the gross income amount that he listed on his Schedule E tax form, or $109,580.

{¶ 15} While the court found Bigner was qualified to render an appraisal value and accepted Bigner's methodology, the court found that it was not appropriate to use Bigner's approach in full because it presumed a 100 percent occupancy rate. On the other hand, the court found that it was not appropriate to blindly accept the figures Donald listed on his Schedule E. The court also noted that there were some obvious inconsistencies between the figures listed on the Schedule E and the written lease agreements for the various properties that had been introduced into evidence. Adding up the total of rents listed in those lease agreements and assuming a 10 percent reduction for occupancy/non-payment, the court determined that it would impute Donald with gross rental income of $143,586 from his rental properties.

{¶ 16} Regarding rental business expenses, the court observed that Donald was again asking the court simply to use the amount he listed on his Schedule E, i.e., $164,618.

The court declined Donald's request, finding again that he had refused to provide documentation corroborating the extent of his claimed expenses. Instead, the court found that $92,194 of claimed expenses were substantiated by the evidence and used that figure to ultimately impute $51,392 in net rental income (that is, $143,586 rental income - $92,194 rental expenses = $51,392 net rental income) to Donald.

{¶ 17} Ultimately, the court found that based on the new income figures and the standard child support worksheet calculations, Donald and Susana were paying roughly the same percentage of their respective gross annual incomes in support of the children. The court found that no deviation from the standard child support worksheet amount, upwards or downwards, was in the children's best interest. Therefore, the court denied both Donald's and Susan's request for a deviation from the child support worksheet figure.

### 2. Dependency Exemption for Income Tax

{¶ 18} In conjunction with the requests to modify child support, the court decided who would claim the dependent tax exemptions for the children. Previously, Donald had taken the exemption for one child and Susana had taken the exemption for the other. After considering the evidence presented as it related to the children's best interest, the court designated Susana as the parent who would claim the tax exemptions for both children.

### 3. Attorney Fees

{¶ 19} Susana sought an attorney fee award of $51,439.50. This constituted 100 percent of her attorney fees and expenses incurred in discovery work, four days of evidentiary hearings on parental rights and child support issues, and one day and one half of testimony on the attorney fee request itself.

{¶ 20} The court awarded sanctions against Donald for his frivolous conduct under R.C. 2323.51 and as it found equitable under R.C 3105.73. Regarding the motions to modify parental rights and related proceedings, the court awarded Susana 50 percent of

her attorney fees. Regarding the child support motions and related proceedings, the court awarded Susana 75 percent of her attorney fees. Finally, the court awarded Susana 100 percent of her attorney fees incurred during the attorney fee hearings. In total, the court ordered Donald to pay $30,406.74 to Susana in attorney fees.

{¶ 21} Donald appealed and presented seven assignments of error.

## II. Law and Analysis

{¶ 22} Before addressing the merits of Donald's assignments of error, we pause to note that Donald is pro se and has been representing himself in these proceedings. Litigants who proceed pro se are held to the same standard as those who are represented by counsel. *Stiles v. Hayes*, 12th Dist. Madison No. CA2015-01-007, 2015-Ohio-4141, ¶ 18. As a result, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and procedures to which represented litigants are bound. *Id.* "Pro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure." *Cox v. Zimmerman*, 12th Dist. Clermont No. CA2011-03-022, 2012-Ohio-226, ¶ 21.

{¶ 23} Donald's various assignments of error contain repetitive and overlapping arguments. For ease of analysis, we address certain of Donald's assignments of error collectively, and out of the order presented in his brief.

### A. Child Support (Assignments of Error Nos. 4, 5 and 7)

{¶ 24} Donald's Assignment of Error No. 4 states:

THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING PLAINTIFF INCREASED CHILD SUPPORT FROM DEFENDANT AND CLAIM [THE YOUNGER DAUGHTER] AS A DEPENDENT[5]

---

5. Except where indicated through the use of brackets, all assignments of error are quoted from Donald's appellate brief without alteration.

{¶ 25} Donald's Assignment of Error No. 5 states:

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPUTING DEFENDANTS NON-EXISTING RENTAL PROFIT WHEN RENTALS ACTUALL TOOK A LOSS

{¶ 26} Donald's Assignment of Error No. 7 states:

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S REQUEST FOR A REDUCTION IN CHILD SUPPORT BECAUSE IT FAILED TO CONSIDER APPELLANT'S NECESSARY AND ORDINARY BUSINESS EXPENSES

{¶ 27} In these three assignments of error, Donald argues that the court abused its discretion by imputing income from his rental business in calculating his child support order. Donald claims that he has no income from the rental business, that he operates that business at a loss, and that he merely owns the various rental properties as "equity properties" that he intends to sell later for a profit. Donald argues that the court ignored his evidence of business expenses associated with his rentals. Donald also challenges the domestic relations court's findings regarding Susana's expenditures on the children and specifically with respect to the clothing purchases and sports. Finally, Donald also asks us to allow him to "keep [the younger daughter] as a dependent."

{¶ 28} A domestic relations court has wide discretion regarding child support obligations, and the decision of the trial court will not be disturbed absent an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### 1. Rental Business Income and Expenses

{¶ 29} The domestic relations court determined that Donald's net income from the rental property business was $51,392. It arrived at this figure by finding that the evidence

showed annual gross rental receipts of $143,586. The court then deducted $92,194, which it found were demonstrated ordinary and necessary business expenses.

{¶ 30} Donald argues that the domestic relations court abused its discretion by ignoring his tax return evidence. He points out that his CPA, Sicking, testified during trial that he reviewed the tax return "and determined nothing was inaccurate * * *." Donald specifically contends that the court abused its discretion when it "ignored" his Schedule E, which listed his claimed expenses as $164,618, which is $72,424 higher than the $92,194 amount determined by the domestic relations court. Donald also argues that the court erred by ignoring the testimony of Lisa Bruewer, who "sees [Donald] pay many of the workers on the rental properties in cash and issuing receipts."

{¶ 31} The domestic relations court committed ten pages of the twenty-eight-page decision to an exhaustive analysis of the evidence related to Donald's rental business. In extraordinary detail, the court pieced together what evidence it could from the materials submitted at the hearings. The decision reflects a logical and fair estimation of Donald's actual income and expenses from the rental business based on the evidence in the record.

{¶ 32} The court did not "ignore" the expenses listed on Donald's Schedule E. The court extensively described the figures listed on the Schedule E and noted all the reasons why the document was not credible evidence of Donald's actual expenses. The court observed that Donald had produced "virtually no documentation" in response to Susana's request for production related to his claimed expenses. He offered no receipts, quotes, invoices, cancelled checks, or other documentation in support at the hearing. Instead, the court noted that Donald was asking the court to blindly accept his tax return as sufficient documentation.

{¶ 33} The court also noted many aspects of the Schedule E that indicated that the document was not a reliable source of information. Those reasons were numerous and

included the following:

- Donald claimed 365 fair rental days for one property but listed rental income of zero.
- Donald reported $109,580 for rental income for all units in 2020 but a review of the lease agreements showed that the total rentals for those same units was $159,540. The court indicated it viewed an approximate $50,000, or 31 percent non-payment rate as "unlikely" based upon the evidence of Donald's management of his rental units.
- Donald claimed depreciation of the real estate as a cash expense.
- Donald claimed a "Section 465(d) Carryover" as a cash expense. The court found that this was not a cash expense.
- Donald claimed over $6,000 in vehicle and travel expenses even though most of his rental properties were located in close proximity to his home.
- Donald claimed approximately $38,500 in cleaning, maintenance, and repair expenses for units he reported to have been rented continuously throughout the year. The court found it unlikely that this much work was performed on occupied rentals.

As such, the domestic relations court did not ignore Donald's Schedule E. It simply found the document not credible evidence of Donald's rental business expenses. The court's decision was supported by R.C. 3119.05, which governs the rules applicable to computing child support. That statue providers that,

> The parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, *tax returns, and all supporting documentation and schedules for the tax returns.*

(Emphasis added.) R.C. 3119.05(A). Donald did not support his claim of expenses as listed on his tax returns by submitting "all supporting documentation." Thus, based on R.C. 3119.05(A), the court could find that the expenses were not verified pursuant to that statute.

{¶ 34} Donald also argues that the domestic relations court ignored the "clear and convincing" testimony by his CPA, Sicking. Once again, the court did not ignore Donald's evidence. The domestic relations court noted that Sicking testified that he reviewed Donald's federal tax returns and testified that they were "consistent" with prior returns. But

Sicking also testified that he did not prepare Donald's 2020 return and had not reviewed Donald's income and expense records in support of that return. The gist of Sicking's testimony was that there was nothing out of the ordinary with respect to Donald's 2020 return as compared to other years. We agree with the domestic relations court's determination that Sicking's testimony was of little weight because he admitted that he did not review the documentation for Donald's claimed expenses.

{¶ 35} Donald also argues that the domestic relations court ignored Sicking's testimony that "Defendant's rentals were equity properties." However, Sicking did not describe Donald's rentals as equity properties and did not even support Donald's argument regarding "equity properties." In fact, Sicking testified that "equity properties" are not common.

{¶ 36} Donald argues that the court ignored the testimony of Lisa Bruewer, who testified to observing Donald paying people who performed work on the rental properties in cash, and that she also observed him issuing receipts for these cash payments. However, the import of Bruewer's testimony was simply as stated by Donald, that he pays rental workers in cash and issues receipts. This does not mean that Donald produced verifiable expense records in discovery or trial. He did not produce the receipts claimed to have been observed by Bruewer at the hearing, so her testimony was of limited if any value.

{¶ 37} Donald cites several cases in support of this assignment of error. Notably, he cites *Larkin v. Larkin*, 2d Dist. Greene No. 2013-CA-54, 2014-Ohio-957, for the proposition that a domestic relations court abuses its discretion by failing to "address" business-related expenses. Donald cited *Larkin* and presented an identical argument (using the same language, in fact) in a 2021 appeal before this court wherein he was litigating the same rental income/expense issue. In that opinion, we found *Larkin* distinguishable and irrelevant because the domestic relations court's decision in *Larkin* was based on the failure to include

*proven* expenses in its calculation of net business income. *Lykins*, 2021-Ohio-274 at ¶ 38. However, in that prior *Lykins* decision, like the decision under review today, the domestic relations court based its findings on Donald's *failure* to prove his business expenses. *Id. Larkin* remains distinguishable and irrelevant to the issues before us.

{¶ 38} Donald also cites *Kamm v. Kamm*, 67 Ohio St.3d 174 (1993), which he cites for the proposition that a court abuses its discretion by not deducting ordinary and necessary expenditures from self-generated income. *Kamm* is also not relevant here. That case involved the question of whether the acquisition of a capital asset (farming equipment) should have been deductible against the child support obligor's gross receipts. *Id*. at 175-176. There was no issue in *Kamm* with a failure to *prove* an expense. The issue was instead whether a demonstrated expenditure qualified for a deduction. *See Kamm* at 176-177. *Kamm* is irrelevant.

{¶ 39} In sum, Donald has not demonstrated that the court abused its discretion in imputing net rental business income. And there is no evidence that the court ignored any evidence submitted by Donald. We note that Donald has now litigated this precise issue in the domestic relations court three times. He has never been successful at convincing the court that he operates his rental business at a loss. *See Lykins*, 2021-Ohio-274 at ¶ 8, 37; *Lykins*, 2018-Ohio-2144 at ¶ 53, 55. That Donald has never produced any credible evidence to support his claim indicates the probable correctness of the domestic relations court's analysis of his rental business income and expenses.

## 2. Children's Expenses

{¶ 40} Next, Donald argues that the domestic relations court abused its discretion by finding that Susana spends $400 monthly on clothes for their children. He argues that it is "impossible" and "unconscionable" to spend $400 per month on clothing for two teenagers and that there is "no way" that Susana spends that much per year on clothes for the

teenagers. Donald also challenges the court's finding that Susana spends $222.50 per month in conjunction with a vehicle for the elder daughter. Donald states that there is "no" car payment. Finally, Donald challenges $172.50 in monthly sports-related expenses. He states that this amount is an "exaggerated lie" because his daughter "hasn't played a sport."

{¶ 41} Susana testified to these amounts and Donald does not dispute that there was evidence in the record to support these figures, but instead merely claims that Susana "lied" in her testimony. However, credibility determinations are matters for the factfinder. *In re L.S.*, 12th Dist. Warren Nos. CA2017-11-157 and CA2017-11-160, 2018-Ohio-1981, ¶ 29.

{¶ 42} Clearly, the domestic relations court found Susana credible. Donald couches his argument as challenging "lies" by Susana, but really, his arguments here amount to a disagreement with Susana's parenting choices. The court found that the expenses testified to by Susana were neither unreasonable nor extravagant. We perceive no abuse of discretion.

{¶ 43} Donald also argues that the domestic relations court ignored the amounts he testified he spends on the children each month outside of his child support obligation. He argues that he spends more per month on the children than Susana. However, Donald's testimony in this regard was concerning his expenses for maintaining his vacation lake house, and the costs associated with owning a boat, horses, and four-wheelers, which his daughters used during his parenting time. Donald also testified as to the costs associated with spending on food or at restaurants during his parenting time. We find no abuse of discretion in the determination that it was not in the children's best interest to order a downward deviation in child support due to these expenses for luxury items or for meals with his daughters.

{¶ 44} Finally, Donald asserts that the court abused its discretion by ignoring

evidence that Susana was cohabitating with her boyfriend, who was paying for roughly half the household expenses. However, the court did not ignore evidence concerning the boyfriend's share of the household expenses and specifically noted that Susana testified that the boyfriend was paying approximately $927.50 per month, and she was paying $1,049.75 per month for mutual household expenses such as the mortgage, utilities, and maintenance.

{¶ 45} In any event, the court's review of the parties' request to deviate from the standard child support amount concerned not the household expenses, but instead the reasonable monthly and annual expenses for the two children. Donald does not assert why the boyfriend's contribution to Susana's household expenses would support a downward deviation of *his* child support order, other than to say she has a boyfriend who pays half the monthly bills. Certainly, Donald is not suggesting that the boyfriend owes Donald's children a legal duty of financial support. We perceive no abuse of discretion in this regard.

{¶ 46} We note here that Donald's arguments regarding the children's expenses, and the arguments he presents in this appeal, in general, are repeatedly in the nature of "the domestic relations court erred because it believed Susana and did not believe me." However, credibility determinations are a crucial and inherent aspect of the trial court system and the domestic relations court was in the best position to address witness credibility. *Dunn v. Clark*, 12th Dist. Warren No. CA2015-06-055, 2016-Ohio-641, ¶ 16. As the Ohio Supreme Court has explained, "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 47} The domestic relations court was in a better position than this court to assess Susana's credibility versus Donald's credibility. Simply because the domestic relations court

believed Susana over Donald does not mean that the court legally erred or abused its discretion. The domestic relations court was free to believe or disbelieve any or all portions of Susana and Donald's respective testimony. *Sheehy v. Sheehy*, 12th Dist. Clermont No. CA2010-01-007, 2010-Ohio-2967, ¶ 16; *Halderman v. Halderman*, 12th Dist. Butler No. CA93-12-240, 1994 WL 462194, *2 (Aug. 29, 1994). Donald has not presented any evidence that suggests that the court abused its discretion by crediting Susana's testimony over his own.

### 3. Dependent Tax Exemption

{¶ 48} Donald next argues that the domestic relations court abused its discretion by permitting Susana to claim the younger daughter as a dependent, when she already claims the older daughter as a dependent. Donald argues that this change was "done [without] a proper hearing and changes the decree and is a clear abuse of discretion."

{¶ 49} We review a domestic relation court's decision allocating tax exemptions for dependents under the abuse of discretion standard. *Zimmerman v. Zimmerman*, 12th Dist. Butler No. CA2014-06-127, 2015-Ohio-1700, ¶ 68. However, "this discretion is both guided and limited by the statutory requirements of R.C. 3119.82." *Id.*, citing *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 52.

{¶ 50} R.C. 3119.82 provides that whenever a court modifies, reviews, or otherwise reconsiders a court child support order "the court shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes * * *." Thus, the issue of the tax exemption designation was properly before the court at the hearing on child support and the fact that it "changes the decree" is not significant as child support orders are subject to modification and the statute expressly requires the court to consider the tax exemption designation upon a modification of child support. Donald does not explain his legal basis for the claim that the change was "done

[without] a proper hearing."  Donald also does not explain what would constitute a "proper hearing."

{¶ 51} Regardless, the statute provides that if the parties do not agree on which parent should claim the children, the court may permit the parent who is not the residential parent to claim the children as dependents *only* if the court determines that allowing the non-residential parent to claim the children as dependents (1) furthers the best interest of the children, and (2) payments for child support are substantially current for the year in which the children will be claimed as dependents.  R.C. 3119.82.

{¶ 52} The Internal Revenue Code creates a presumption in favor of awarding the tax exemption to the residential parent.  *See Zimmerman* at ¶ 71.  If there is a disagreement as to which parent should claim a child as a dependent, then the burden is on the nonresidential parent to produce competent and credible evidence to show that allocating the dependency exemption to the nonresidential parent is in the best interest of the child. *Id.*, citing *Burns v. Burns*, 12th Dist. Warren No. CA2011-05-050, 2012-Ohio-2850, ¶ 27.

{¶ 53} R.C. 3119.82 provides that in determining the best interests of the child, the court "shall" consider a number of factors including (1) any net tax savings, (2) the relative financial circumstances and needs of the parents and children, (3) the amount of time the children spend with each parent, (4) the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and (5) any other relevant factor concerning the best interest of the children.

{¶ 54} In awarding Susana the tax exemption for both children, the domestic relations court noted that neither party presented any evidence concerning net tax savings or other federal or state tax credits.  The court found that the children spent 312 nights with Susana in 2021, which was 85 percent of the total parenting time.  The court also noted that Donald's income was 2.4 times higher than Susana's.  Additionally, the court noted that it

was obvious from the evidence that Donald's net worth was significantly greater than Susana's.

{¶ 55} The court found that based on the limited evidence presented on the issue, the court could not find that allowing Donald to claim one of the children as a dependent was in the children's best interest as required by R.C. 3119.82. Accordingly, the court found that Susana would be entitled to claim both children.

{¶ 56} Upon review, we perceive no abuse of discretion. Donald failed to submit competent and credible evidence that would overcome the presumption that the residential parent should receive the tax exemption. Donald's only argument on appeal is that the change was made without a "proper hearing." However, he had a hearing. He simply failed to present credible evidence on the issue. The court's decision complied with R.C. 3119.82.

{¶ 57} We overrule Donald's fourth, fifth, and seventh assignments of error.

**B. Attorney Fees (Assignments of Error Nos. 1, 2, 3 and 6)**

{¶ 58} Donald's first, second, third and sixth assignments of error all address attorney fees, and we will address them collectively.

{¶ 59} Donald's first assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING PLAINTIFF'S ATTORNEY FEES BY AWARDING PLANTIIFF 50% OF HER ATTONREY FEES IN THE AMOUT OF $8,695.45

{¶ 60} Donald's second assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING PLAINTIFF'S ATTORNEY FEES BY AWARDING PLANTIIFF 75% OF HER ATTONREY FEES FOR CHILD SUPPORT MOTIONS IN THE AMOUNT OF $17,618.89

{¶ 61} Donald's third assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING PLAINTIFF'S ATTORNEY FEES BY AWARDING PLANTIIFF 100% OF HER ATTONREY FEES FOR CHILD

SUPPORT MOTIONS IN THE AMOUNT OF $4,092.40

{¶ 62} Donald's sixth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION AWARDING PLAINTIFF'S ATTORNEY FEES BY ACCOUNTING FOR DEFENDANTS INHERITANCE AND INVESTMENTS AND SHOWING BIAS TOWARD PLAINTIFF

### 1. Attorney Fees Incurred for the Modification of Parental Rights

{¶ 63} Donald contends that the domestic relations court abused its discretion in awarding Susana 50 percent of her attorney fees incurred in connection with the motions to modify allocation of parental rights. Donald contends that Susana failed to show he acted frivolously. He also argues that he made multiple settlement offers which were ignored by Susana. Donald accuses the domestic relations court judge of being "extremely biased" against him. Finally, Donald challenges the domestic relation court's consideration of his assets in imposing attorney fees. Donald does not challenge the reasonableness of the time expended by Susana's attorneys or legal staff, or their hourly rates.

{¶ 64} An award of attorney fees is within the sound discretion of the trial court. *Lightfield v. Lightfield*, 12th Dist. Warren No. CA2017-11-164, 2018-Ohio-4383, ¶ 26. A trial court's decision to award attorney fees will be reversed only if it amounts to an abuse of discretion. *Id.*

{¶ 65} The domestic relations court awarded Susana attorney fees in accordance with two attorney fee statutes. The first attorney fee statute, R.C. 2323.51, provides that a trial court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with a civil action to a party adversely affected by frivolous conduct. R.C. 2323.51(B)(1). Pursuant to R.C. 2323.51(A)(1)(a), "conduct" includes "the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, * * * or the taking of any other action in connection

with a civil action * * *."  The Code definition of frivolous conduct includes conduct that "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation."  R.C. 2323.51(A)(2)(a)(i).

{¶ 66} Review of a trial court's decision regarding frivolous conduct involves mixed questions of law and fact.  *Winn v. Wilson*, 12th Dist. Butler No. CA2016-03-066, 2016-Ohio-7545, ¶ 11.  The trial court's factual determinations are accorded a degree of deference and will not be disturbed on appeal if there is competent, credible evidence in the record to support them.  *Id.* citing *Judd v. Meszaros*, 10th Dist. Franklin No. 10AP-1189, 2011-Ohio-4983, ¶ 18.  The appellate court applies a de novo review to legal questions, such as whether a party's conduct satisfies the statutory definition of frivolous conduct. *Id.*

{¶ 67} With respect to the second attorney fee statute on which the domestic relations court based its award, R.C. 3105.73, we note that the domestic relations court specifically cited R.C. 3105.73(A).  That statute provides:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

However, R.C. 3105.73(B) provides:

> *In any post-decree motion* or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

(Emphasis added.) The attorney fee award here arose out of post-decree motions and proceedings and did not arise during the divorce proceedings themselves. Accordingly, the (B) subsection applied in this case, not the (A) subsection.

{¶ 68} Based upon the plain language of R.C. 3105.73(B), the main consideration in awarding attorney fees under this section is whether the court finds such an award "equitable." We review an award of attorney fees under R.C. 3105.73(B) for an abuse of discretion. *Coomes v. Coomes*, 12th Dist. Clermont No. CA2019-10-076, 2020-Ohio-3839, ¶ 11-12.

{¶ 69} Donald's first assignment of error regards the attorney fee award ordered in conjunction with the competing motions for a modification of parental rights.[6] In awarding attorney fees under R.C. 2323.51 and 3105.73, the domestic relations court stated it considered Donald's conduct during those proceedings, including his failure to comply with discovery requests and his filing of frivolous motions in conjunction with those proceedings, which required Susana to respond. The court also stated it considered Donald's statement during these proceedings that he would keep filing motions to obtain the parenting rights he wanted "until the court gets it right" or "we get it right." The court acknowledged that Donald's motion to modify parental rights met the "threshold" requirement for a change in circumstances in that he alleged that Mother was living with a boyfriend. However, the court noted that his evidence to demonstrate that a modification was in the children's best interest was "very weak." Instead, the court found that the harm likely to be caused by a change in parental time was outweighed by the benefits and the evidence of this was "overwhelming."

{¶ 70} Finally, the court noted that during Susana's deposition, Donald made insulting and demeaning comments to her and her attorney. And during the evidentiary

---

6. We again note that the decision on a modification on parental rights has not been appealed, only the order awarding attorney fees in conjunction with those proceedings.

hearing, Donald's conduct caused the proceedings to take much longer and required additional trial preparation by Susana's attorneys. The court noted that Donald represented himself in the proceedings, engaged in improper conduct during the proceedings, and engaged in conduct that would not have occurred had he been required to comply with the Rules of Professional Conduct.

{¶ 71} Donald does not articulate *how* the domestic relations court abused its discretion in awarding attorney fees based on the considerations discussed above. Instead, Donald generically argues that Susana failed to meet her burden to show that he acted frivolously. But he does not explain this argument other than stating it and moving on to an entirely separate argument, involving his apparent offers to settle with Susana. We decline to craft an argument for him. App.R. 16(A)(7) (requiring an appellant's brief to contain "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions* * *").

{¶ 72} Whether Donald made settlement offers is irrelevant to the factors that the domestic relations court considered in imposing attorney fees, such as Donald's presentation of frivolous arguments and his engagement in behavior that caused an unnecessary delay and a needless increase in the cost of litigating the matter. Even if we assumed (which we do not) that Susana unreasonably resisted settling the case with Donald, it would be completely irrelevant to Donald's conduct that justified the imposition of attorney fee sanctions.

{¶ 73} Donald also argues that the domestic relations court is biased against him. This is merely a personal attack on the court that does not articulate legal error or explain *how* the court abused its discretion for imposing attorney fees for the reasons stated in the decision. Regardless, as Donald is aware, the Ohio Supreme Court, not this court, is the proper forum for allegations of judicial bias. See *In re Disqualification of Coss*, 164 Ohio

St.3d 1220, 2021-Ohio-2375 (in which the Ohio Supreme Court rejected Donald's request to disqualify the domestic relations court judge in this case for alleged bias).[7]

{¶ 74} For these reasons we find no merit to Donald's argument that the domestic relations court erred in awarding Susana attorney fees in connection with the motions to modify parental rights.

### 2. Attorney Fees Incurred for the Motions to Modify Child Support

{¶ 75} In his second assignment of error, Donald contends that the domestic relations court abused its discretion in awarding Susana 75 percent of the attorney fees she incurred in connection with the parties' competing motions to modify child support. Donald again argues that Susana failed to show that he acted frivolously in connection with his child support motion. Donald contends that it was Susana's attorneys, not him, who drove up the costs of litigation. Donald argues that the fact that the court excluded the costs of Bigner—Susana's expert witness—from the requested fee award indicates that the court should have excluded any attorney fee award. Donald also argues that the court abused its discretion by failing to accept his "stipulations." Donald does not challenge the reasonableness of the hourly rates charged by Susana's attorneys.

{¶ 76} In awarding Susana's attorney fees in conjunction with the child support motions, the domestic relations court again noted that Donald failed to comply with discovery requests regarding his rental business, including failing to provide records regarding his claimed business expenses, occupancy records, invoices, contracts, or receipts for payment in cash or otherwise. The court also noted that Donald pursued a frivolous claim that Susana was voluntarily underemployed because she did not earn the

_____

7. We pause to note Donald's related conduct at oral argument. Donald, in hyperbolic fashion, characterized the domestic relations court as having committed four "tricks" against him. Oral argument should focus on potential legal errors, not insulting or unprofessional rhetoric.

- 22 -

average salary for a person with her years of experience in her career. The court found that Donald frivolously argued that his net worth was not relevant to the issue of child support while simultaneously cross-examining Susana on her net worth. Finally, the court noted that Donald had argued that his financial condition was so poor due to his child support obligations that he could not buy a nicer home, take vacations with the children, or spend any money on the children. The court found that "overwhelming evidence" negated this claim, which included findings that Donald earned an annual salary of $160,000, listed sales of capital assets of almost 1.8 million dollars, had rental income from multiple rentals he owned debt free, and voluntarily lived in one of his rentals. The court also found that Donald had taken a Hawaiian vacation, owned a farm, and owned a vacation home on a lake.

{¶ 77} As with the first assignment of error, Donald does not explain how the domestic relations court abused its discretion by awarding Susana attorney fees based on the above findings. He argues that Susana failed to demonstrate that he acted frivolously, but again simply posits this in a conclusory and generic fashion without articulating his argument. Again, we decline to craft Donald's argument for him. App.R. 16(A)(7).

{¶ 78} The trial preparation and trial work by Susana's attorneys that Donald describes as excessive did not cause Donald to engage in the behavior which resulted in the court finding that his conduct was frivolous. That is, the amount of trial preparation or trial strategy employed by Susana's attorneys did not cause him to refuse to comply with discovery requests or advance frivolous arguments. There is no nexus between his claim of excessive attorney billing and the domestic relation's courts findings concerning Donald's conduct. To the extent that Donald is suggesting that the time expended by Susana's attorneys was unreasonable, he does not articulate that argument and we will not make it for him.

{¶ 79} Likewise, the fact that the court decided not to award Susana fees for costs

she spent on an expert witness (Bigner) and the fact that the court failed to accept Donald's "stipulations" are irrelevant to Donald's conduct that the court found frivolous and merited an award of attorney fees. Regardless, the domestic relations court explained that it would not award Susana her expert witness fees because the court did not find that Bigner's testimony was sufficient as a matter of law to use to impute income to Donald.

{¶ 80} Donald has not demonstrated any errors in the domestic relations court's decision to award attorney fees to Susana in conjunction with the motions to modify child support. We overrule Donald's second assignment of error.

### 3. Attorney Fees Incurred at the Hearing on Attorney Fees

{¶ 81} Donald argues that the court abused its discretion in awarding Susana 100 percent of the fees incurred by her attorneys during the attorney fee hearing.

{¶ 82} In awarding Susana 100 percent of her attorney fees in conjunction with the attorney fee hearing, the court observed that Donald's arguments opposing the fees were frivolous and his conduct at the hearing unnecessarily prolonged the hearing.

{¶ 83} Upon review, we do not find that Donald has demonstrated an abuse of discretion in the court's decision to award Susana her fees for the attorney fee hearing. In his appellate brief, Donald essentially just contradicts the domestic relations findings by summarily stating that the judge "lied" in his entry and did so to "punish" him.

{¶ 84} Donald argues that he made "significant progress" at the attorney fee hearing by highlighting several fees he believed were improperly billed. He argues that Susana's attorneys billed for discussing settlement offers that he made, and also billed for discussing those settlement offers with Susana. Donald does not explain why he believes that this amounted to improper billing. It is common knowledge that attorneys bill for all time spent on litigation matters. Settlements offers are part of litigation and of course attorneys bill for communicating about settlement offer with other attorneys and with their clients. And there

is nothing unusual with two attorneys working on the same case. Given Donald's propensity to file motions and the level of conflict present, it is not surprising that Susana requires the assistance of more than one attorney.

{¶ 85} It appears that Donald may be citing evidence regarding settlement offers to suggest that Susana was unreasonably resistant to settlement. But simply because Donald made a settlement offer does not mean that that offer was made in good faith or was reasonable. Notably, Donald does not point to anything in the record containing any details of his settlement offers. He just simply states that he made settlement offers. Regardless, whether Donald made settlement offers or not is irrelevant to the issue of whether the court abused its discretion in awarding Susana her fees for the time her attorneys spent presenting and defending their request for a fee award.

{¶ 86} Nothing that Donald has argued demonstrates any abuse of discretion by the domestic relations court in awarding Susana her attorney fees for the attorney fee hearing. The necessity for that hearing was the result of Donald's conduct in the prior proceedings and it is equitable that Donald be required to pay for Susana's attorneys' time in presenting and defending their client's request for an attorney fee award. We overrule Donald's third assignment of error.

### 4. Consideration of Donald's Assets in Awarding Fees

{¶ 87} In his sixth assignment of error, and interspersed within other assignments of error, Donald argues that the court erred in considering his assets in determining the amount of the attorney fee award. Donald presents his argument as the following: "Trial court clearly took Defendant's inherited assets into account when appropriating Plaintiffs attorney fees, which through the courts own admission can't be calculated as part of child support * * *." Donald does not explain this argument. It is not clear why the court's limitation from considering an inheritance or other non-wage assets in a child support determination would

have any impact on an attorney fee award.

{¶ 88} For the first time in his reply brief, Donald challenges the domestic relation's court consideration of his assets in imposing attorney fees under R.C. 3105.73(B). Again, that statute states:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, *but it may not consider the parties' assets*.

(Emphasis added.)

{¶ 89} Donald is correct that if the court had awarded attorney fees solely under R.C. 3105.73(B), then the court should not have considered his assets based on the plain language of that statute. The last sentence of R.C. 3105.73(B) states that the court "may not consider the parties' assets."

{¶ 90} However, an appellant may not use a reply brief to raise new arguments in an appeal. *Eckert v. Warren Cty. Rural Bd. of Zoning Appeals*, 12th Dist. Warren Nos. CA2017-06-095, CA2017-07-107 thru 109, 2018-Ohio-4384, ¶ 56; *Phillips v. McCarthy*, 12th Dist. Preble No. CA2015-08-017, 2016-Ohio-2994, ¶ 25. Accordingly, Donald has forfeited this argument concerning R.C. 3105.73(B). *Id*.

{¶ 91} Even if Donald had not forfeited the argument, we note that while the domestic relations court stated it could consider Donald's assets under R.C. 3105.73(A), stated that Donald's assets were "very relevant," and described Donald's assets, the court then went into an extended discussion of Donald's behavior that merited an award of attorney fees. The court then addressed the question of what percentage of fees was equitable with regard to each of the motions with respect to which Susana requested attorney fees, and why

those percentages were appropriate. In this discussion, the court never mentioned Donald's assets. It therefore appears that the court decided the key question under R.C. 3105.73(B)—that is, whether an attorney fee award was "equitable"—without reference to Donald's assets. Therefore, the court did not base its award on Donald's assets, and did not err.

{¶ 92} Finally, we observe that the court also awarded attorney fees for frivolous conduct under R.C. 2323.51, which does not limit the court from considering net worth in assessing a fee award. Therefore, even if the trial court had improperly considered Donald's assets in its R.C. 3105.73(B) analysis, such error would have been harmless because the court was permitted to consider assets in its R.C. 2323.51 analysis.

{¶ 93} Accordingly, we overrule Donald's first and sixth assignments of error.

### III. Conclusion

{¶ 94} Donald has failed to demonstrate an abuse of discretion in the court's various awards of attorney fees or in the court's decision to modify child support.

{¶ 95} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.