[Cite as *Connelly v. Connelly*, 2025-Ohio-4929.]

# IN THE COURT OF APPEALS OF OHIO
## SIXTH APPELLATE DISTRICT
## LUCAS COUNTY

---

WILLIAM CONNELLY,

    PLAINTIFF-APPELLEE,

  v.

CARRIE CONNELLY,

    DEFENDANT-APPELLANT.

CASE NO. L-24-1207

OPINION AND
JUDGMENT ENTRY

---

Appeal from Lucas County Common Pleas Court
Domestic Relations Division
Trial Court No. DR2012 1096

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:  October 28, 2025

---

APPEARANCES:

  *C. Gustav Dahlberg* for Appellant

  *Patricia A. Kovacs* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Carrie Connelly ("Mother') brings this appeal from the judgment of the Court of Common Pleas of Lucas County, Domestic Relations Division modifying the shared parenting plan in place between Mother and plaintiff-appellee William Connelly ("Father"). On appeal Mother claims that the trial court erred by 1) improperly modifying the shared parenting plan; 2) modifying the child support obligation; and 3) denying the request for attorney fees and ordering Mother to pay an inequitable share of the guardian ad litem fees. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} The parties divorced in 2013 and a shared parenting plan was implemented in regards to their two children (born 2007 and 2010). As part of the order, the decree ordered Father to pay Mother $1,745.48 per month in child support. The amount was a deviation from the guideline calculation of $1,894.34 per month. On October 27, 2023, Father filed a motion to vacate the shared parenting plan and to designate him as the residential parent and legal custodian of the children. Mother filed a response on November 29, 2023 requesting that Father's motion be dismissed, requested a modification of child support, and requested an award of attorney fees. Father then requested a guardian ad litem ("GAL") be appointed and the trial court did so on January 25, 2024. The trial was scheduled for June 24, 2024.

{¶3} On June 7, 2024, Father filed a motion to amend his motion to vacate indicating he no longer wished to vacate the shared parenting plan, just to modify it and requesting that his child support be decreased. The trial was held as scheduled with both children being interviewed *in camera*. Testimony was presented by Father, Mother, and the GAL. The trial court issued a decision on July 22, 2024. The decision modified the shared parenting schedule to be one where the parties alternated weeks. The trial court then ordered a deviation in support of $1,407.37 per month due to the equal parenting time. Father was then ordered to pay Mother $140.71 per month. The decision did not address the motion for attorney fees. The trial court directed counsel for Father to prepare a final judgment entry. The trial court then filed its final entry on November 13, 2024, but again did not address the motion for attorney fees and issued no order regarding the payment of GAL fees.

{¶4} Mother appealed from the judgment and raises the following assignments of error on appeal.

**First Assignment of Error**

**The trial court erred and abused its discretion by inequitably modifying the regular parenting time schedule in the parties' shared parenting plan, against the best interests of the minor children, pursuant to the provision of [R.C. 3109.04 and 3109.051].**

**Second Assignment of Error**

**The trial court erred and abused its discretion by inequitably modifying [Father's] child support obligation, pursuant to the**

**provisions of [R.C. 3119.07, 3119.22, 3119.23, 3119.231, and 3119.24].**

**Third Assignment of Error**

**The trial court erred and abused its discretion by failing to make an award of attorney's fees to [Mother] pursuant to the provisions of [R.C. 3105.73] and by inequitably allocating responsibility for the [GAL's] fees pursuant to the provisions of Rule 48 of the Ohio Rules of Superintendence.**

*Modification of Shared Parenting Plan*

{¶5} In the first assignment of error, Mother claims that the trial court erred by modifying the shared parenting plan. In support of this assignment, Mother makes two arguments: 1) the trial court failed to require a change of circumstances and 2) the modification was against the manifest weight of the evidence. The procedure for modification of parental rights and responsibilities is governed by R.C. 3109.04(E).

(E)(2) In addition to a modification authorized under division (E)(1) of this section:

. . .

(b) The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

R.C. 3109.04(E)(2)(b). Subsection (E)(2)(b) of R.C. 3109.04 authorizes the trial court, either on its own initiative or at the request of one of the parents, to modify the terms of a shared parenting plan. *Bruns v. Green*, 2020-Ohio-4787 at ¶ 11. If the trial court is merely modifying the terms of the shared parenting decree pursuant to R.C. 3109.04(E)(2)(b), the trial court need not find a change of circumstances but rather need only consider the best interest of the child. *Fisher v. Hasenjager*, 2007-Ohio-5589, ¶ 33.

{¶6} Here, Father filed a motion to modify the terms of the shared parenting plan. The modifications requested merely changed the terms of the plan, but did not terminate the plan (which would have required the trial court to designate parental rights and responsibilities). As it did not alter the shared parenting designation of parental rights and responsibilities, the requirements of R.C. 3109.04(E)(1) are not implicated and the trial court need not find a change of circumstances. *Fisher*. Thus, the trial court was not required to find a change of circumstances to modify the terms of the shared parenting plan.

{¶7} Mother also argues that the modification of the shared parenting plan was against the manifest weight of the evidence. "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial

ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14. When considering the evidence, the appellate court must be mindful of the presumption in favor of the finder of fact. *Id*. An appellate court is required to interpret evidence in a light consistent with the verdict and most favorable to sustaining it. *Id*. In this case, the question to be resolved by the trial court was whether the modification of the shared parenting plan was in the best interest of the children. The factors to be considered by the trial court in determining the best interest of the children is set forth in R.C. 3109.04(F).

> (1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F).

{¶8} In reaching its decision, the trial court considered each of the statutory factors set forth in R.C. 3109.04(F)(1). The trial court noted that Father wished to modify the shared parenting plan and Mother wished to keep the current plan. R.C. 3109.04(F)(1)(a). The trial court noted that it had considered the wishes of the children as expressed during an in camera interview. R.C. 3109.04(F)(1)(b). The trial court noted that the children related and interacted well with both parents and the parents "care greatly" for their children. R.C. 3109.04(F)(1)(c). Both children have adjusted well to being in both homes. R.C. 3109.04(F)(1)(d). Both children appear to be healthy with one receiving the counseling suggested to help her with her stressors. R.C. 3109.04(F)(1)(e). The trial court determined that both parties would honor and abide by the agreement. R.C. 3109.04(F)(1)(f). No indication of any arrears in child support was presented. R.C. 3109.04(F)(1)(g). The trial court found that neither party had a conviction for child abuse, child neglect, or domestic

violence. R.C. 3109.04(F)(1)(h). Neither party has denied parenting time to the other and the trial court noted that the parties seemed to be able to work together to provide some flexibility in the parenting time schedule when needed. R.C. 3109.04(F)(1)(i). The trial court noted that neither party was planning to move outside of the state. R.C. 3109.04(F)(1)(j).

{¶9} Next, the trial court considered the statutory factors set forth in R.C. 3109.04(F)(2). The trial court found that the parties had previously shown the ability to cooperate and reach common decisions. R.C. 3109.04(F)(2)(a). The trial court determined that the parties have the ability to encourage good relationships with the other party, but noted that both parents sometimes appeared reluctant due to the conflict between them. R.C. 3109.04(F)(2)(b). No history of abuse or domestic violence existed in this case. R.C. 3109.04(F)(2)(c). The parties live sufficiently close enough to each other to make a shared parenting plan idoneous. R.C. 3109.04(F)(2)(d). Finally, the trial court noted that the GAL recommended adopting an alternating week parenting schedule on a year round basis rather than only during the summer. R.C. 3109.04(F)(2)(e). The trial court then determined that modifying the shared parenting plan would be in the best interest of the children.

{¶10} The evidence shows that under the shared parenting plan enacted in 2013, the children resided with Mother primarily, with Father having them from 5:00 p.m. Thursday until 5:00 p.m. Sunday every other week, every Tuesday evening from 3:30 p.m. until 7:00 p.m., every other Thursday from 5:00 p.m. until

school on Friday morning (the weeks they do not remain at his home), and every other week during the summer. At the time of this plan, the children were very young (ages 5 and 3). The modified plan implemented by the trial court in 2024 provided for Mother and Father to alternate weeks throughout the year rather than the summer only. A review of the record shows that both parents are very loving of the children and want the best for them. The record also shows that both parents can and do provide appropriate homes for the children. The in-camera interviews showed that the children loved both parents and enjoy spending time with both of them. The recommendation of the GAL was that "a week to week companionship schedule be implemented throughout the year, with a midweek time for the non-possessory parent." GAL Report. The GAL testified that the children needed the consistency of less changing between the home and this would provide the most stability for the children. The GAL also testified about each of the relevant best interest statutory factors. Thus the evidence supports the findings made by the trial court regarding the best interest of the children. Given all of the evidence presented, this Court does not find that the trial court lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. The first assignment of error is overruled.

*Child Support Deviation*

{¶11} In the second assignment of error, Mother claims that the trial court erred by deviating from the child support worksheet calculations. Mother makes

three arguments in support of this assignment: 1) The trial court failed to determine that the guidelines were not appropriate; 2) The trial court failed to consider the statutory factors to grant the deviation; and 3) The trial court's award was against the manifest weight of the evidence. Child support orders for shared parenting plans are governed by R.C. 3119.24, which provides in relevant part as follows.

> (A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet, except that, if that amount would be unjust or inappropriate to the children or either parent and therefore not in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.
>
> (2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child, and findings of fact supporting its determination.

R.C. 3119.24(A). "Under R.C. 3119.03, the amount of child support calculated using the basic child support schedule and the applicable worksheet is rebuttably presumed to be the correct amount of child support." *Reynolds v. Reynolds*, 2021-Ohio-2140, ¶ 34 (6th Dist.). The factors that may be considered for deviation are set forth in R.C. 3119.23, which provides:

> (A) Special and unusual needs of the child or children, including needs arising from the physical or psychological condition of the child or children;

(B) Other court-ordered payments;

(C) Extended parenting time or extraordinary costs associated with parenting time, including extraordinary travel expenses when exchanging the child or children for parenting time;

(D) The financial resources and the earning ability of the child or children;

(E) The relative financial resources, including the disparity in income between parties or households, other assets, and the needs of each parent;

(F) The obligee's income, if the obligee's annual income is equal to or less than one hundred per cent of the federal poverty level;

(G) Benefits that either parent receives from remarriage or sharing living expenses with another person;

(H) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(I) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(J) Extraordinary work-related expenses incurred by either parent;

(K) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(L) The educational opportunities that would have been available to the child had the circumstances requiring a child support order not arisen;

(M) The responsibility of each parent for the support of others, including support of a child or children with disabilities who are not subject to the support order;

(N) Post-secondary educational expenses paid for by a parent for the parent's own child or children, regardless of whether the child or children are emancipated;

(O) Costs incurred or reasonably anticipated to be incurred by the parents in compliance with court-ordered reunification efforts in child abuse, neglect, or dependency cases;

(P) Extraordinary child care costs required for the child or children that exceed the maximum state-wide average cost estimate as described in division (P)(1)(d) of section 3119.05 of the Revised Code, including extraordinary costs associated with caring for a child or children with specialized physical, psychological, or educational needs;

(Q) Any other relevant factor.

R.C. 3119.23. The Ohio Supreme Court has previously held that the provision that "any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination" is mandatory and must be followed in all material respects. *Marker v. Grimm*, 65 Ohio St.3d 139, 143 (1992). *See also DePalmo v. Depalmo*, 1997-Ohio-184. "If a court does find that a deviation is appropriate under the statutory factors, it must include three items in the journal entry: (1) the amount of child support calculated pursuant to the schedule and worksheet through the line establishing the actual annual obligation; (2) its determination that the presumed amount would be unjust or inappropriate and would not be in the best interests of the child; and (3) findings of fact supporting that determination. *Green v. Tarkington*, 2010-Ohio-2165, ¶ 20 (3d Dist.). The failure

to comply with the statutory requirement is reversible error. *Rock v. Cabral*, 67 Ohio St.3d 108, 110 (1993).

{¶12} Here, a review of the judgment entry shows that the trial court did not make a finding that the failure to deviate was not in the best interest of the children or that a failure to deviate would be unjust or inappropriate and did not set forth any findings of fact supporting the decision. The trial court merely stated that it had "set forth factors and calculation in the Decision with respect to the deviation of the child support and has attached a worksheet to this Judgment Entry regarding that deviation." Journal Entry at 4. A review of the Decision referenced in the Journal Entry did not show any finding that the failure to deviate was not in the best interest of the child, which is a requirement of the statute. The trial court stated that it was deviating because of the equal parenting time. Although the time spent parenting the child is one of many factors to be considered, a shared parenting plan does not automatically entitle a party to a deviation for time spent with the children. *Pauly v. Pauly*, 1997-Ohio-105. Because the trial court did not meet the statutory requirements, the second assignment of error is sustained.

*Fees*

{¶13} Mother's third assignment of error challenges the trial court's failure to address her request for attorney fees as well as the trial court's failure to address her objection to the GAL's request for extraordinary fees. Initially, this Court notes that Mother filed her request for attorney fees in her response to Father's motion to

vacate the shared parenting plan, claiming that the allegations in Father's motion were frivolous and without merit. The judgment entry does not indicate that the trial court ever ruled on the motion. "When a trial court does not expressly rule upon a motion, it is deemed denied when a court enters final judgment." *Caterpillar Financial Services Corporation v. Tatman*, 2019-Ohio-2110 (4th Dist.).

{¶14} An award of attorney fees is within the sound discretion of the trial court and will only be reversed if there is an abuse of discretion. *Lykins v. Lykins*, 2023-Ohio-4469 (12th Dist.). A court may award attorney fees to a party if the opposing party engages in conduct that "serves merely to harass or maliciously injure another party" to the action. R.C. 2323.51. Additionally a domestic relations court "may award all or part of reasonable attorney's fees . . . if the court finds the award equitable." R.C. 3105.73(B). The party seeking the award of attorney fees bears the burden of demonstrating the reasonableness of the request. *Brantley, Inc. v. Tornstrom*, 2024-Ohio-2908 (8th Dist.).

{¶15} Here, Mother requested attorney fees in her response to Father's motion to vacate the shared parenting agreement. The response included a list of attorney fees. However, that was the only time the issue was raised. At the hearing, no questions were asked regarding attorney fees. No testimony or exhibits were presented regarding the matter and Mother did not bring the issue to the attention of the trial court. Given the record before us, this Court does not find that the trial court abused its discretion in not granting Mother's request for attorney fees.

{¶16} Mother also requested that she not be required to pay half of the GAL fees. On August 5, 2024, the GAL filed a motion requesting extraordinary fees and expense. Mother then filed a response requesting that the trial court order Father to pay for the GAL due to their income disparity. The response requested the trial court hold a hearing on the matter. The trial court chose not to hold a hearing and ordered that the parties would each be responsible for one half of the guardian ad litem fees. On appeal, Mother claims that the trial court erred by ordering her to pay one half of the fees without a hearing.

{¶17} "A trial court is granted broad discretion under Civ.R. 75(B)(2) with respect to appointment of guardians ad litem and orders for payment of their fees." *Gabriel v. Gabriel*, 2009-Ohio-1814, ¶ 15 (6th Dist.). The decision of the trial court will be reviewed using an abuse of discretion standard. *Id*. "Inherent in the trial courts authority to appoint a guardian ad litem and tax the fees as costs is the authority to set a reasonable value for the services rendered." *Beatley v. Beatley*, 2003-Ohio-4375, ¶ 7 (5th Dist.). In doing so, the trial court is not required to conduct a hearing on the fees as long as the parties have an opportunity to put their objections on the record. *Id*. at ¶ 10. Here, Mother had no objection to the amount of the fees, but rather claimed that it was inequitable to ask her to pay half due to Father's higher income and lower expenses. All of the evidence cited by Mother in her response to the motion for extraordinary fees was already presented during the hearing. The GAL's motion was supported by a detailed description for all of the

fees requested. The trial court indicated that it had considered Mother's response when it considered the motion for extraordinary fees. The trial court noted that the response contained no additional information to support the claims of Mother in her response. The trial court then concluded that the GAL "was a benefit to the children themselves by performing appropriate duties and presenting the Court with recommendations regarding the best interest of the minor children." Order to Pay GAL Fees at 2. A review of the record shows that the conclusions of the trial court are supported by competent, credible evidence. As a result, the trial court did not abuse its discretion by ordering the fees to be split equally by the parties. The third assignment of error is thus overruled.

{¶18} Having found error prejudicial to the Appellant in the particulars assigned and argued in the second assignment of error, the judgment of the Court of Common Pleas of Lucas County, Domestic Relations Division is reversed in part. The matter is remanded to the trial court for further proceedings as to that issue. Having found no error prejudicial to the Appellant in the particulars assigned and argued in the first and third assignments of error, the judgment of the Court of Common Pleas of Lucas County, Domestic Relations Division is affirmed in part.

*Judgment Affirmed in Part,*
*Reversed in Part,*
*And Cause Remanded*

**WALDICK, P.J. concurs.**
**ZIMMERMAN, J., concurs in Judgment Only.**

Case No. L-24-1207

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, it is the judgment and order of this Court that the judgment of the trial court is affirmed in part and reversed in part with costs assessed equally between Appellant and Appellee for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

John R. Willamowski, Judge

Juergen A. Waldick, Judge

William R. Zimmerman, Judge
Concurs in Judgment Only

DATED:
/hls

**Judges John R. Willamowski, Juergen A. Waldick, and William R. Zimmerman, from the Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.**